327 So.2d 301 (1975)
STATE of Louisiana
v.
Kirksey McCord NIX et al.
No. 56371.
Supreme Court of Louisiana.
December 8, 1975.
Rehearing Denied February 20, 1976.
*313 Wayne Douglas Mancuso, Metairie for defendants-appellants Peter Frank Mule and Kirksey McCord Nix, Jr.
Frederic G. Hayes, Lafayette, for John Fulford.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Thomas S. Halligan, Asst. Attys. Gen., Harry A. Connick, Dist. Atty., for plaintiff-appellee.
BOLIN, Justice.
During the night of April 10-11, 1971, the home of Frank Corso was forcibly entered by three armed men, apparently intent on committing a burglary. Mr. Corso was in the house along with his wife and three of their children. Mrs. Corso discovered the men in the last stages of forcing open the rear door of the residence. She ran down the hall screaming for her husband.
Frank Corso, who had been sleeping, secured a .32 caliber pistol which he kept in the house and confronted the burglars. A gunfight ensued during which Frank Corso was mortally wounded. One of the gunmen was also apparently wounded. The men fled from the residence followed by Mrs. Corso, who had retrieved her husband's weapon and fired at the men. During their flight the intruders abandoned their burglar tools. The one who was apparently wounded was assisted from the house by another of the men.
Following a police investigation, the three defendants herein, along with a fourth man, James Knight, were arrested for the murder of Mr. Corso. All were indicted for murder by the Orleans Parish Grand Jury. Knight, the alleged driver of the getaway vehicle, was severed from the others and granted immunity in order to secure his testimony. The other three defendants, following a change of venue to Lafayette Parish, were tried jointly for murder. All three were found guilty without capital punishment and sentenced to life imprisonment. All three appeal, presenting a total of 140 bills of exceptions to this Court for review. Unless otherwise noted herein, the bills of exceptions apply to all three defendants. La.C.Cr.P. art. 842.[1]
BILLS OF EXCEPTIONS NOS. 1, 31, 125 and 130.
Bills Nos. 1 and 31 relate to the refusal of the trial court to continue the arraignment and trial of defendant, Kirksey McCord Nix, Jr., only, because Mr. Nix was allegedly improperly brought before the state courts of Louisiana while in federal custody. Bill No. 125 relates to the refusal of the trial judge, in response to a post-trial motion, to order production of a written agreement between the federal and state governments permitting the trial of the defendant in state court. Bill No. 130 was reserved when the trial court, following the conviction and sentence of the defendants in these proceedings, ordered Mr. Nix returned to federal custody to complete his federal sentence prior to beginning to serve his concurrent state sentence.
It should be noted initially that no extradition of the defendant, Kirksey McCord Nix, Jr., was necessary in this case. The defendant had been brought from the State *314 of Texas to the State of Louisiana by federal officials to stand trial in this state on federal charges.
The thrust of the argument of counsel for Mr. Nix is that the presence of the defendant was secured in state court through the issuance of a writ of habeas corpus ad prosequendum by the district court directed to the United States marshal in whose custody the defendant was confined, rather than through appropriate executive action directed to the United States Attorney General.
Article VII, § 2 of the Louisiana Constitution of 1921 specifically authorized each district court judge throughout the state to issue writs of habeas corpus. "Habeas corpus" is defined in La.C.Cr.P. art. 351 as a writ commanding a person who has another in his custody to produce him before the court. "Custody" is defined in the article as "detention or confinement as a result of or incidental to an instituted or anticipated criminal proceeding."
La.C.Cr.P. art. 369 provides that there shall be no appeal from a judgment granting or refusing to grant a writ of habeas corpus. This appeal is therefore not the proper forum to collaterally attack the issuance of the writ of habeas corpus ad prosequendum. The attempts demonstrated by these bills of exceptions to collaterally attack the propriety of the writ of habeas corpus ad prosequendum were properly rejected by the trial court. Each of the motions of defendant, Nix, to which these bills of exceptions are directed was irrelevant to the proceedings before the court at the time the motion was made. The denial of these motions in no way prejudiced the rights of the defendant to bring a direct action, in either state or federal court, to challenge the jurisdiction of the district court over the person of the defendant.
Such direct attack was in fact brought in federal court and found to be without merit. In re Nix, 465 F.2d 377 (5th Cir. 1972), cert, denied, 409 U.S. 1112, 93 S.Ct. 924, 34 L.Ed.2d 694 (1973).
These bills are without merit.
BILLS OF EXCEPTIONS NOS. 2 and 3
These bills were reserved by defendants Nix and Mule to the taking of the deposition of a material witness. La.R.S. 15:257 et seq.
Bill No. 2 was reserved to the denial of defendants' oral motion to dismiss the taking of the deposition. Defense counsel alleged the unconstitutionality of the material witness statutes on numerous grounds. Bill No. 3 was reserved when the court overruled defendants' motion to hold the deposition in chambers rather than in open court.
Both bills were rendered moot by subsequent proceedings. The material witness was present and testified at defendants' trial. The deposition complained of in these bills was not admitted into evidence, nor was it used for impeachment purposes.
Any public prejudice to the defendants which might have resulted from the trial court exercising the discretion granted it by La.R.S. 15:258 to take the deposition in open court rather than in chambers was rendered moot by the subsequent change of venue to the Parish of Lafayette and voir dire examination of prospective jurors in that parish.
BILLS OF EXCEPTIONS NOS. 4 and 27
Prior to trial, the defendants filed a prayer for oyer requesting that the state produce for pre-trial inspection any and all oral and/or written confessions, statements and admissions by any of the defendants or their co-defendant, James Knight.
The state answered that it had no written confessions or other statements, and *315 that it was not required to produce any oral confessions or other statements.
The trial court held that the state's answer was sufficient and these duplicate bills were reserved. In its per curiam to Bill No. 27, the trial court cites State v. Square, 257 La. 743, 244 So.2d 200 (1971) in support of its ruling. Square was the latest expression of opinion by this Court at the time of the trial of the defendants herein.
No oral confession, i. e., the result of custodial interrogation, was introduced in this trial. Two state witnesses, however, related statements made by the defendants to them during and shortly after the crime in question.
This Court has repeatedly held that the state is not required to produce oral inculpatory statements in response to a pre-trial prayer for oyer. State v. Major, 318 So.2d 19 (La.1975); State v. Nelson, 306 So.2d 745 (La.1975); State v. Breston, 304 So.2d 313 (La.1974); State v. Watson, 301 So.2d 653 (La.1974); State v. Sears, 298 So.2d 814 (La.1974); State v. Sears, 298 So.2d 814 (La.1974); State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Hall, 253 La. 425, 218 So.2d 320 (1969). The trial court correctly applied to this case the law as it existed in 1972.
These bills are without merit.
BILL OF EXCEPTIONS NO. 5
This bill was reserved in connection with the ruling of the trial court on the defendants' motion for a bill of particulars.
The trial court ordered the state to supply the defendant with the following information in connection with the alleged murder of Frank Corso: the address where the crime was committed; the date and time of day when the crime was committed; the method by which the deceased met his death (gunshot wounds); the paragraph of La.R.S. 14:30 under which the prosecution was proceeding (both La.R.S. 14:30(1) and (2)); and the enumerated felonies under La.R.S. 14:30(2) (armed robbery, attempted armed robbery, aggravated burglary, attempted aggravated burglary).
The trial court declined to order the state to reveal: the number and location of the bullet wounds in the body of the deceased; the caliber of the bullets involved; whether any other instrumentality was involved in the death of the deceased and, if so, what kind; whether each defendant allegedly inflicted wounds or whether one or more were being charged as principals and, if so, which were charged only as principals; what part each defendant took in the alleged crime; and the time Mr. Corso received his wounds as opposed to the time he died.
The function of a bill of particulars is to inform the accused concerning matters pertinent to the charge against him which the trial court, in the exercise of its sound discretion, considers necessary in fairness to permit the accused to defend himself. La.C.Cr.P. art. 484; State v. Nelson, 306 So.2d 745 (La.1975); State v. Womack, 283 So.2d 708 (La.1973); State v. Rose, 271 So.2d 863 (La.1973); State v. Bourg, 248 La. 844, 182 So.2d 510 (La.1966), cert, denied, 385 U.S. 866, 87 S.Ct. 127, 17 L.Ed.2d 93 (1966). It does not require full pre-trial discovery, State v. Brown, 288 So.2d 339 (La.1974); nor is it designed to compel disclosure of the detailed evidence upon which the state will rely to prove its case. State v. Vince, 305 So.2d 916 (La.1974); State v. Rose, supra; State v. Bourg, supra; State v. Brown, supra.
Applying these standards to the rulings of the trial court in this case, as set forth above, we find no abuse of discretion in the denial of the information sought beyond that which was ordered disclosed. The additional matters sought were clearly evidentiary in nature, and not essential to the preparation of an adequate *316 defense. State v. Nelson, supra; State v. Gibson, 271 So.2d 868 (La.1973); State v. Rose, supra; State v. Shilow, 260 La. 23, 255 So.2d 60 (1971); State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967). As we noted in State v. Major, supra: "The defendant is entitled to know what the State intends to prove, but not the evidence to be used." 318 So.2d at 20.
This bill is without merit.
BILLS OF EXCEPTIONS NOS. 6, 7 and 8
These bills were reserved to the denial of an evidentiary hearing "to attach the affidavits and applications upon which [certain] search warrants were based" in support of defendants' motion to suppress evidence (Bill No. 6); the denial of a stay order pending an application for writ of review to this Court (Bill No. 7); and the refusal of the trial court to permit the defendants to call a police officer-affiant to the stand for cross-examination as to the veracity of the affidavit (Bill No. 8).
The motion to suppress itself merely alleges that searches were conducted "without the benefit of a valid search warrant and/or said searches and seizures and search warrants were improperly and illegally executed."
The trial court ruled that the defendants could not go beyond the "four corners" of the affidavit and attempt to attack the veracity of the affiant. State v. George, 273 So.2d 34 (La.1973); State v. Anselmo, 260 La. 306, 256 So.2d 98 (1971).
The hearing on the motion to suppress wherein these bills of exceptions were reserved was held on August 18, 1971. This was prior to the decisions of this Court in State v. Giordano, 284 So.2d 880 (La.1973); and State v. Melson, 284 So.2d 873 (La.1973). Even applying the rules of those cases retroactively to the case at bar, however, does not demonstrate error in the rulings complained of herein.
In the Melson and Giordano cases, this Court stated that in order to go beyond the "four corners" of the affidavit in support of a search warrant application, it is necessary that the defendant set out the particular portion of the affidavit which the defendant claims to be mistaken, plus the reason for the belief that the affidavit was in error. Clearly, no such specificity is contained in the motion to suppress.
In the Giordano case, we stated:
"This should be the minimum requirement before the court should be required to hear testimony concerning the truthfulness of the contents of the affidavit upon which the search warrant is issued. The defendant must demonstrate a genuine issue to enable the court to regulate the proof, and to allow the State an opportunity to produce the evidence relevant to the issue.
"An allegation that the evidence `was not seized incidental to a valid arrest and/or search' will not justify the exercise of the judicial process merely to explore whether the affiant was truthful." 284 So.2d at 881.
We find no abuse of discretion in the rulings complained of in these bills.
BILLS OF EXCEPTIONS NOS. 9 and 10
These bills pertain to the bail hearing ordered by the trial court. Bill No. 9 was reserved when the trial court granted a stay order to permit the state to seek a supervisory writ in this Court. Bill No. 10 was reserved to the scope of the hearing.
Both bills are moot. The subsequent trial and conviction of the defendants obviates the need for review of these bills.
*317 BILLS OF EXCEPTIONS NOS. 11 and 13
These bills pertain to the denial of defendants' motion to suppress.
As stated in the bills of exceptions, twelve search warrants were obtained in connection with this case. The trial court numbered the warrants for identification. Warrants numbers 4 and 10 were unexecuted and are therefore of no moment. The trial court maintained the motion to suppress with regard to warrants 1, 2, 5, 6, 9 and 11. With regard to these warrants, there is nothing to review.
The trial court overruled the motion to suppress with regard to warrants 3, 7 and 8 and Bill No. 11 was reserved. Bill No. 13 reurged the same motion, and so will be considered at the same time.
The attack on each of these search warrants centers on the sufficiency of the affidavit supporting the application for the warrant. The affidavits will be reviewed in chronological order rather than numerical order for simplification.
The affidavit in support of warrant number 7 sets forth the following pertinent allegations:
Frank Corso was killed on April 11. The perpetrators wore black ski masks. There was an exchange of gunfire during the incident. On the next day, April 12, Kirksey Nix was admitted to a Dallas hospital with a gunshot wound of the abdomen. A confidential informant told police that Nix had been treated at the 4114 Encampment Street address for a gunshot wound following his participation in the Corso burglary-murder. Information was also received that Knight and Fulford resided at 4114 Encampment Street. Knight was wanted in Florida on an unlawful flight to avoid prosecution charge. F.B.I. agents apprehended Knight at 4114 Encampment. In the immediate area of his arrest, F.B.I. agents observed black ski masks and several firearms.
The affidavit sets forth probable cause for the search of 4114 Encampment Street. State v. Martin, 318 So.2d 25 (La.1975); State v. Pacicra, 290 So.2d 681 (La.1974).
Warrant number 8 is supported by an affidavit which alleges, in substance, the following:
The perpetrators of the Corso burglary-murder were four white males. They wore black ski masks and were armed with automatic pistols. Knight was arrested by federal agents under a federal warrant at 4114 Encampment Street. The federal agents observed black ski masks plus firearms. The manager of the apartment identified the tenants as Fulford and Knight. Fulford and Knight had been referred to the manager by the occupant of 4101 Davey Street (in the same apartment complex), whom the manager identified as Sandra Rutherford Nix. The manager also identified a photograph of Kirksey Nix as a frequent visitor at 4101 Davey Street. Kirksey Nix was known to have been admitted to a Dallas hospital with a gunshot wound to his abdomen on April 12, 1971, the day after the Corso shooting.
This affidavit likewise sets forth probable cause for the search of 4101 Davey Street.
Warrant number 3 was for the search of 4802 Pontchartrain Boulevard, Apartment No. 7. The affidavit in support thereof sets forth that Frank Corso was murdered on Sunday, April 11, 1971. During an exchange of gunfire, one of the perpetrators was wounded. Abandoned at the scene was a Black Hawk Porto-Power Model P-400 with a slip lock extension. A confidential informant identified one of the perpetrators as "Pete." During execution of the warrants at 4114 Encampment and 4101 Davey Streets, papers were found bearing the name of Peter Mule. A witness was located who told of seeing Nix, Fulford, Knight and Mule, plus Nix's wife, together at Nix's apartment on April *318 7, 1971, four days before the Corso murder.
An investigation revealed that the Porto-Power tool found at the scene was sold on September 18, 1970, and was picked up on February 18, 1971. The salesperson picked a photograph of Peter Mule from a group of photographs and identified Mule as the purchaser. Mule and his commonlaw wife, Betty Jo Anderson, frequently stayed at 4802 Pontchartrain Boulevard, Apartments 7 and 9.
Here the connexity between the facts alleged and the premises to be searched is rather tenuous. In State v. Paciera, supra, this Court cited the jurisprudence of the United States Supreme Court governing review of search warrant applications and affidavits in these terms:
"As Spinelli [Spinelli v. U.S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637] observed, `in judging probable cause magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense' and `their determination of probable cause should be paid great deference by reviewing courts.' 393 U.S. 419, 89 S.Ct. 590. Further, where the law enforcement officers have respected the constitutional mandate to secure a warrant before searching, `[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' Ventresca [v. U. S.] at 380 U.S. [102] 109, 85 S.Ct. 741, 746 [13 L.Ed.2d 684]. See also Jones at 362 U.S. [257] 270, 80 S.Ct. 725, 735-736 [4 L.Ed.2d 697]." 290 So.2d at 687.
Applying this standard to the affidavits in the present case, we do not find that the trial court abused its discretion in upholding the search warrants in question. In each, sufficient facts were alleged, in the composite, to support a search of the premises in question. As our trial brother states in his per curiam to this bill of exceptions:
"The Court felt that the motion to suppress should be overruled because the cumulative effect of the allegations of the affidavit constituted probable cause. No single statement or fact per se constituted probable cause, but the totality of the picture presented to the Magistrate, construed in accordance with the common sense rule of construction, approved by the United States [Supreme Court] in U. S. v. Ventresca, 380 U.S. 108, 85 Supreme Court Reporter 746 [13 L.Ed.2d 684], justified the judgment in issuing the order to search."
We find these bills to be without merit.
BILL OF EXCEPTIONS NO. 18
After the bail hearing, defendants reurged the motion to suppress previously overruled by the trial court. (Bills of Exceptions Nos. 11 and 13, supra.) Defendants alleged that there were conflicts between the testimony of the witnesses at the bail hearing and information contained in the search warrant affidavits. To the denial of this motion, Bill No. 18 was reserved.
Specifically, with regard to warrant number 3 (see discussion of bills Nos. 11 and 13, supra), defendants allege that the affidavit of the police officer stated four principal facts to establish probable cause to search 4802 Pontchartrain Boulevard, Apartment No. 7: (1) that a porto-power tool allegedly used to break into the Corso residence was found on the scene of the crime; (2) that the porto-power tool was eventually traced to the Cornwell Tool Company which, it was discovered, had sold it on September 18, 1970; (3) that the saleslady who sold the tool identified the defendant, Peter Mule, as purchasing the tool on that date; and, (4) that the defendant, *319 Peter Mule, frequently stayed at the Pontchartrain Boulevard apartment.
The employee of Cornwell Tool Company, called as a witness by defense counsel on the bail bond hearing, testified that the company did not record the serial numbers of such tools when they were sold and, therefore, she could not positively identify the particular tool in evidence.
Although defense counsel had the Cornwell employee on the stand, he did not inquire into the other facts alleged in the affidavit which would have been within her knowledge. Based solely upon this apparent discrepancy between the allegations of the affidavit and her testimony, defense counsel moved to suppress the evidence obtained pursuant to the search warrant, or at least to be permitted a full evidentiary hearing on the veracity of the affidavit.
Based on the Cornwell employee's trial testimony, it is apparent that the questions defense counsel did not ask are as revealing as those that he did ask. For example, defense counsel did not ask her whether she could identify Peter Mule as the purchaser of a porto-power tool from Cornwell Tool Company as alleged in the affidavit (she could and did at the trial), whether she remembered Mr. Mule for any particular reason (she did because he was accompanied by a teacup poodle named "Pete," described in the search warrant affidavit), whether the invoices of Cornwell Tool Company supported her memory of a sale of a porto-power tool to Peter Mule on September 18, 1970, and a Z-650 slip lock extension to the defendant on February 18, 1971 (they did).
The Cornwell employee's trial testimony supports the police officer's recitals in the search warrant affidavit in all but one particular. The officer stated that the porto-power tool found at the scene of the crime was purchased by Mr. Mule, whereas the actual testimony of the Cornwell Tool Company employee was that a porto-power tool indistinguishable from that found at the scene of the crime was purchased by defendant Mule. While the distinction is significant to the merits of the defense (and it was fully exploited before the jury at the trial), it is not sufficient to render the officer's affidavit, which was otherwise accurate on the crucial points, unreliable and lacking in trustworthiness.
The same may be said of the alleged discrepancies relied upon by the defendants in attacking the affidavits in support of the search warrants numbers 7 and 8. The alleged discrepancy relied upon is the difference in description of the alleged getaway vehicle described in the officer's affidavit (black and grey Grand Prix, bearing Florida plates No. 1W-228515), with the testimony of a Corso neighbor, who testified that he saw what he believed to be a Mustang automobile near the Corso residence after the shooting. However, the testimony of the witness did not directly connect the vehicle he saw with the perpetrators of the Corso murder. Trial testimony did establish the veracity of the affidavit by confirming that John Fulford owned a dark colored Grand Prix automobile, which was used as the getaway car following the Corso murder.
The trial court correctly denied the motion to suppress. This bill lacks merit.
BILLS OF EXCEPTIONS NOS. 12, 14, 15, 16, 17 and 19
All of these bills relate to defendants' Motion for Inspection of All Evidence and Disclosure of Information. This lengthy motion had a dual thrust. It first asked for disclosure of numerous evidentiary items and information developed by the state, including work product of the prosecuting attorneys and their investigators. As to these items, our law is clear. The defendant is not entitled to pre-trial discovery of the evidence by which the state intends to prove its case. State v. Major, supra; State v. Brown, 288 So.2d *320 339 (La.1974); State v. Square, 257 La. 743, 244 So.2d 200 (1971).
The second aspect of the motion requested production of evidence favorable to the accused, citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To this request the state responded that it had no evidence favorable to the accused. The court then denied defendants' motion and Bill No. 12 was reserved. Bill No. 14 was reserved when the trial court denied the same motion, which was reurged after the hearing on the application for bail, in light of the testimony elicited at that hearing. Bill No. 15 was reserved when the trial court refused to order the state to turn over to the defendants the statements taken by the police from the Cornwell Tool Company employee and the neighbor of Mr. Corso. Bill No. 16 was reserved when the trial judge refused to order the state to reveal the name of the owner of a weapon found at the scene of the Corso murder. Bill No. 17 was reserved when the trial judge refused to order the state to reveal the name of a subject brought to the scene of the crime for possible identification. Bill No. 19 was reserved when the trial judge refused to appoint a commission to review the state's files and evidence to determine what, if anything, contained therein would be favorable to the defense.
With regard to the so-called Brady motion, the trial court in its per curiam to Bill No. 17, states:
"The Court does not construe Brady v. Maryland as permitting the defendant to have unlimited pre-trial discovery. Rather, it holds, in effect, that if the defendant can show that the State deliberately withheld specific evidence favorable to the defendant, then he would be entitled to a reversal of his conviction, if it occurred. Brady does not contemplate a `fishing expedition' by the defendant, nor a pre-trial inspection, in camera, by the Court, of the State's file, to determine if there is anything in such which could conceivably help the defendant in the presentation of the defense."
In State v. Williams, 310 So.2d 528 (La. 1975), we stated that in response to a Brady motion, "the State does not have to open its files to the defendant and allow the defendant to search and decide what is exculpatory." 310 So.2d at 533.
Dealing with the specific points raised in these bills, the testimony of the Cornwell Tool Company employee and the Corsos' neighbor did not tend to negate the guilt of the defendants. See the discussion of Bill No. 18, supra. The testimony of the Cornwell employee was highly incriminatory to defendant, Peter Mule. The testimony of the Corso neighbor was essentially irrelevant. Besides, both had been examined under oath by defense counsel at the bail hearing, thereby providing defendants with an opportunity to explore their knowledge of the case.
Regarding Bills of Exceptions Nos. 16 and 17, both items of requested information proved to be irrelevant in subsequent proceedings. As the state's attorney pointed out in arguing this motion, "[f]alse leads followed out by the police certainly are not evidence tending to negate the guilt of the defendants." State v. Major, supra; Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).
Regarding defendants' request for a commission to review the state's files or an in camera review by the trial court (Bill No. 19) we have held that the law does not at present require such a procedure. State v. Major, supra; State v. Ranker, 263 La. 914, 269 So.2d 812 (1972).
These bills are without merit.
BILL OF EXCEPTIONS NO. 20.
When the trial court denied a defense motion for a continuance based on lack of time to prepare for trial, this bill was reserved.
*321 The granting or denying of a continuance is largely within the discretion of the trial judge. La.C.Cr.P. art. 712.
The minutes of the trial court for Tuesday, May 4, 1971, reflect that defendants Fulford, Knight and Mule informed the court that they had retained counsel. Trial was set for February 28, 1972, almost ten months later.
In its per curiam to this bill of exceptions, the trial court also notes that defense counsel had approximately five weeks to reprepare for trial following a change of venue granted on November 23, 1971.
This bill has no merit.
BILL OF EXCEPTIONS NO. 21
This bill is clearly disposed of by Judge Veron's per curiam:
"This bill relates to a motion to inspect photographs, charts, and diagrams of the scene of the crime in the possession of the District Attorney's office.
"This request was denied on the basis of State v. Square, 257 La. 743, 244 So.2d 200 (1971). The Court viewed this request as one to inspect the State's evidence.
"I might add that I felt the defendants were entitled to view the premises where the alleged crime took place. As I recall, the defendants were allowed to and did visit the scene and thus, were able to have available to them the things they requested in this bill."
BILL OF EXCEPTIONS NO. 22
This bill is likewise without merit and is fully treated by the trial court's per curiam:
"This bill relates to the Court denying defendants' request that the Court conduct a session of the trial at the scene of the crime in order that the jury might view the place where the alleged crime occurred.
"This request was denied as there was no showing that a viewing of the scene by the jury was necessary in order to guarantee to the defendants a fair and impartial trial."
BILL OF EXCEPTIONS NO. 23
This bill was reserved when the trial court denied defense counsel's "Motion to Quash the Indictment." The motion was addressed to the alleged duplicity of the short form indictment, following the answer of the state to defendants' request for a bill of particulars, wherein the state answered that it was proceeding under both subsections of La.R.S. 14:30 (prior to its amendment by Act 109 of 1973). It is alleged that "[i]f the State intends to proceed, as it has replied in its Answer to Bill of Particulars, under both paragraphs of the indictment, then the indictment is faulty for in effect it charges two offenses (intentional murder and felony-murder)."
Our law is well settled that charging defendants under both subsections of La.R.S. 14:30 is a proper conjunctive charge, La.C.Cr.P. art. 480, and is not duplicitous, La.C.Cr.P. art. 491. State v. Rowan, 233 La. 284, 96 So.2d 569 (1967); State v. McAllister, 244 La. 42, 150 So.2d 557 (1963).
The bill is without merit.
BILL OF EXCEPTIONS NO. 24
The denial of a motion to quash due to the possible imposition of the death penalty, which was alleged to constitute "cruel and unusual punishment," forms the basis for this bill of exceptions.
The bill is moot, as the death penalty was not imposed in this case.
*322 BILLS OF EXCEPTIONS NOS. 25, 26, 30, 123 and 124
These bills address themselves to the various motions to quash the grand jury and the petit jury venire.
Bill No. 25 was reserved when the trial court refused to quash the petit jury venire because of the occupational exemptions granted to certain public officials and members of certain professions by La.C.Cr.P. art. 403, and because the petit jury venire allegedly contained no women or Negroes.
Bill No. 26 was reserved to the refusal of the trial court to quash the grand jury venire due to the alleged underrepresentation of Negroes.
Bill No. 30 was reserved to the denial of a motion by defendant, Kirksey McCord Nix, Jr., to set aside the petit jury venire due to the alleged exclusion of Negroes and Indians.
Bills Nos. 123 and 124 were reserved post-trial to the denial of duplicate motions for new trial and/or in arrest of judgment and evidentiary hearing to attack the composition of the petit jury venire. These post-trial motions were properly denied, as defendants were afforded an evidentiary hearing on their pre-trial motions to quash. The allegations do not fall within the grounds for a motion for a new trial, La.C.Cr.P. art. 851, nor within the grounds for a motion in arrest of judgment, La.C.Cr.P. art. 859.
Although defendants were afforded a pre-trial evidentiary hearing on the composition of the grand jury and petit jury venires, no evidence was introduced in support of the motions to quash. In the absence of any evidence to support the allegations of the motions to quash, the trial court did not err in overruling the motions. State v. Hamilton, 297 So.2d 419 (La. 1974).
The exemption of certain occupational categories from jury service does not per se deprive the defendant of a cross-section of the community, so as to render a jury selected in accordance with La.C.Cr.P. art. 403 unconstitutional. State v. Rollins, 271 So.2d 519 (La.1973). Nor was any fraud or ill practice in the selection of either jury venire alleged or shown. La.C.Cr.P. art. 419; State v. Marks, 252 La. 277, 211 So.2d 261 (1968) death sentence vacated, 408 U.S. 933, 92 S.Ct. 2849, 33 L.Ed.2d 746 (1972); State v. Clifton, 247 La. 495, 172 So.2d 657 (1965).
Defendants' arguments that the unconstitutionality of La.C.Cr.P. art. 402, exempting women from jury service, should be applied retroactively to this 1972 trial are clearly without merit. Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975); State v. Rester, 309 So.2d 321 (La.1975).
Finally, defendants rely upon the decision of the United States Supreme Court in Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), for the proposition that the jury selection system employed in the Fifteenth Judicial District Court was unconstitutional at the time of defendants' trial because it resulted in a disproportionately low number of Negroes appearing on the venire in relationship to the general population of the community.
We do not find Alexander controlling here for two reasons. First, defendants submitted no evidence to establish the racial composition of the petit jury venire. In the absence of this evidence, a comparison of the percentage of Blacks on the venire with the general population of the community is impossible. Second, no evidence was introduced to show that the jury selection system employed in this case, tried in 1972, was the same as that employed *323 in 1968 at the time of the trial in the Alexander case.
We therefore hold that defendants have failed to carry their burden of proving racial discrimination in the selection of the grand jury and petit jury venires.
These bills lack merit.
BILL OF EXCEPTIONS NO. 28
When the trial court denied a defense motion to prohibit the state from examining prospective jurors on voir dire concerning their feelings on capital punishment, this bill was reserved. As stated by the trial judge in his per curiam:
"At the time this case was tried, capital punishment was constitutional in the State of Louisiana. This Court did not deem that it could deny the State the right to ask questions concerning a punishment which was constitutional at that time."
Further, this bill is rendered moot by the subsequent trial verdict of guilty without capital punishment.
BILLS OF EXCEPTIONS NOS. 29 and 42
These bills relate to the denial of John Fulford's request to have a lunacy commission appointed (Bill No. 29) and the denial of an oral motion by Mr. Fulford's counsel to sever Mr. Fulford's trial from that of the other defendants based on his alleged mental inability to assist his counsel in his defense (Bill No. 42).
The motions in question in these bills relate solely to Mr. Fulford's mental capacity to stand trial.
Mental incapacity to proceed is defined in La.C.Cr.P. art. 641 as:
"Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."
The trial court may, in the exercise of its sound discretion, order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. La.C.Cr.P. art. 643. The judgment of the trial court will not be reversed unless there is a strong showing of clear abuse of discretion. State v. Luquette, 275 So.2d 396 (La.1973); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966), cert, denied, 388 U. S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374 (1967). The appointment of a lunacy commission is not a perfunctory matter or a ministerial duty of the trial court, nor is it guaranteed to every accused in every case. State v. Graves, 247 La. 683, 174 So.2d 118 (1965).
In the present case, evidence was offered by counsel for John Fulford in support of the motion to appoint a lunacy commission. The evidence consisted of the testimony of Dr. William McCray, a qualified psychiatrist, who examined Fulford in his cell on the day before trial at the request of defense counsel. La.C.Cr.P. art. 646. The examination lasted approximately fifty minutes. Dr. McCray noted that a psychiatric evaluation usually requires several conferences with the patient, as well as a supporting evaluation from a clinical psychologist. Dr. McCray found the defendant, John Fulford, to be "well oriented as to time, place and person and [he] seemed cognizant of physical facts of what was going on around him." Nevertheless, Dr. McCray opined that "Mr. Fulford had paranoid delusions which kept him from adequately assisting in his own defense."
Dr. McCray's opinion was apparently based on Mr. Fulford's statements during the examination, which Dr. McCray relates as follows:
"He spoke with me at great length about hishiswell, concerns or his beliefs that everyone connected with him in the case was against him and attempting to keep him fromfrom going to trial *324 and attempting to prevent him from proving his innocence.
"Because of this, he stated that he was withholding names of witnesses that he felt could prove his innocence because if he revealed these names that they would be arrested and held in jail and kept from testifying for him. He felt that not only his attorneys but that the judge was against him and in league to keep him from his day in court, that the illnessthe recent illness of the judge was not an illness at all but just another ploy toto keep him out of court. As a result ofof this meeting with him, it was my preliminary opinion that thethat Mr. Fulford had paranoid delusions which kept him from adequately assisting in his own defense."
The trial judge, in his per curiam, gives his reasons for denying the lunacy commission as follows:
"I was satisfied that this defendant was oriented as to time, date and place and was cognizant of everything around him. It appeared to me that this was just a subterfuge on the part of this defendant to attempt to keep from going to trial so that he would be tried at a different time from the other defendants. Subsequent happenings during the trial and after the trial have thoroughly convinced me that my ruling at the time of this hearing was correct. * * *"
In his per curiam to Bill of Exceptions No. 42, the judge adds:
"I might further add, contrary to what the doctor testified at the hearing to determine whether Mr. Fulford was unable to assist counsel in his defense, that the alleged eye witnesses, which Mr. Fulford stated would prove his innocence, were called and did testify as to his alleged alibi. Throughout the entire trial Mr. Fulford was accorded a complete and full defense and I saw nothing from the beginning of the trial to the end that in any way detracted from any of Mr. Fulford's rights. I hesitate to state but I do feel that this was a plan designed by Mr. Fulford to try to disrupt his trial and to prevent him from being tried with his co-defendants.
"* * * I am now thoroughly convinced that the lunacy hearing and motion to sever were purely attempts to try to delay the trial or prevent Mr. Fulford from being tried at that time."
The judge's findings are amply supported by the record. Mr. Fulford told Dr. McCray on February 29, 1972, that he could not trust his attorneys and would not divulge the names of his alibi witnesses. On Thursday, March 9, 1972, the alleged alibi witnesses were in court testifying on Mr. Fulford's behalf. Thus it is clear that Mr. Fulford did not withhold the names of his witnesses, and was able to assist his counsel in the preparation and conduct of his defense.
State v. Monroe, 305 So.2d 902 (La. 1974), is distinguishable on its facts. In Monroe, the lay evidence at the trial corroborated the opinion of the psychiatrist that the defendant was a schizophrenic psychotic with limited contact with reality and limited ability to distinguish between right and wrong. Here the lay evidence and the observations of the trial court are contrary to the preliminary findings of Dr. McCray.
In view of the ability of the trial court to observe Mr. Fulford at length during the preliminary hearings and the trial of this case, coupled with, the limited time Dr. McCray spent in formulating his opinion as to Mr. Fulford's mental condition, we cannot say the trial court abused its considerable discretion in refusing to appoint a lunacy commission to evaluate John Fulford.
*325 BILLS OF EXCEPTIONS NOS. 32, 33, 34, 35 and 39
When the trial court denied a defense request to question prospective jurors individually on various principles of law covered by the court in its general questioning of each panel of prospective jurors, these bills were reserved. The trial court gave counsel for the state and for the defense a list of general instructions which the court would cover with the panel as a whole. Counsel were informed then that they could cover any area not already covered by the court's instructions.
Bills Nos. 32 and 39 were reserved to the procedure in general. Bills Nos. 33 (allowing other jurors to influence opinion), 34 (presumption of innocence) and 35 (burden of proof) dealt with specific principles of law previously covered quite comprehensively by the court.
Counsel are entitled to wide latitude in conducting voir dire examination of prospective jurors. La.C.Cr.P. art. 786; State v. Jones, 282 So.2d 422, 430 (La.1973); State v. Hills, 241 La. 345, 129 So.2d 12 (1961). While the trial court has the discretion to limit voir dire examination, that discretion must be exercised in such a fashion as to allow counsel wide latitude in voir dire examination, if reversible error is to be avoided. State v. Jones, supra; State v. Conrad, 304 So.2d 318 (La. 1974). Of course, the trial court has the discretion to disallow questions which are irrelevant, inflammatory or misleading to the prospective jurors. State v. Elam, 312 So.2d 318 (La.1975); State v. Scott, 307 So.2d 291 (La.1975).
In the present case, counsel for both the state and the defense were afforded wide latitude in questioning the prospective jurors regarding potential grounds for bias or prejudice. The trial court, however, refused to allow repetitive questioning of each prospective juror concerning principles of law covered exhaustively by the trial court in its initial examination of the prospective jurors. There was no showing here of any prejudice to the defendants resulting from the procedure employed, nor any showing that the trial court limited voir dire as to any prospective juror who expressed any doubt or uncertainty during the voir dire by the trial court. Under these circumstances, we find the limited restrictions upon voir dire examination here imposed to be within the discretion of the trial court. State v. Chapman, 298 So.2d 753 (La.1974).
These bills are without merit.
BILL OF EXCEPTIONS NO. 36
This bill was reserved when the trial court sustained the state's objection to the following question propounded by defense counsel to a prospective juror: "* * * could you, Sir, stand by your conviction of guilt or innocence as you so believe in your mind without outside influence?"
The question was rejected by the trial court as being contrary to the principle of law enunciated in State v. Murphy, 154 La. 190, 97 So. 397 (1923), which states:
"[The] charge was correctly refused as calculated to impress any juror with the idea that he should not listen to the arguments and views of his fellow jurymen, or be influenced thereby, when the contrary should be the case, if he is able to reconcile his own conception of the case, conscientiously, with that of his fellows." 97 So. at 403.
We find no abuse of discretion in the ruling to which this bill is directed, due to the ambiguity of the question.
BILLS OF EXCEPTIONS NOS. 37, 132 and 133
These bills were directed to an order of the trial court requiring each peremptory challenge of a prospective juror to be allotted to a particular defendant.
*326 La.C.Cr.P. art. 799 directs:
"In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant." (Emphasis added.)
In this joint trial of three defendants, all represented by the same counsel, the trial court correctly ruled that each peremptory challenge must be allotted to a specific defendant. This must be the case if the record is to reflect whether a particular defendant exhausted his peremptory challenges prior to the completion of the jury panel.
The rulings to which these bills are directed were correct.
BILL OF EXCEPTIONS NO. 38
This bill was reserved to the denial of a defense challenge for cause of a prospective juror whose wife's brother was a murder victim.
The prospective juror indicated that there might be a doubt in his mind that this might affect his thinking on the case. The prospective juror had indicated that he understood the principles of law upon which he was instructed by the trial judge, including the presumption of innocence, and that he could apply those principles in the case at bar.
We find no reversible error on the part of the trial court in refusing a challenge for cause.
BILL OF EXCEPTIONS NO. 40
This bill relates to a denial of a defense challenge for cause of a prospective juror who initially expressed some doubt as to his impartiality due to what he had read in the papers. The court further interrogated the prospective juror and instructed him as to the law. The prospective juror then testified that he could apply the law, including the presumption of innocence, as instructed by the court.
In his per curiam to this bill, the trial judge states:
"A reading of the transcript attached to this bill will show that the juror stated that he would have a complete open mind and would decide the case solely on the evidence presented in the courtroom and would accept the law as the Court gave it to him."
The ruling of the trial court was not an abuse of his discretion. State v. Richmond, 278 So.2d 17 (La.1973); State v. Heard, 263 La. 484, 268 So.2d 628 (1972); State v. Owen, 126 La. 646, 52 So. 860 (1910).
The bill is without merit.
BILL OF EXCEPTIONS NO. 41
This bill is adequately explained by the trial court in its per curiam to this bill:
"A reading of the transcript attached to this bill shows that the juror, when his name was pulled, was not present in Court. The Court ordered an attachment for this juror at which time the defense objected and wanted the Court to remain in recess until this juror would appear in Court. The State, in order to move the trial along, agreed to use one of its peremptory challenges on this juror and proceed. The defense objected to this challenge by the State and the Court overruled it.
"To have remained in recess until this juror could have been located and returned to Court would have been a delay and would have served no useful purpose since the juror would be challenged upon his arrival in Court and in order to move the trial on inasmuch as all jurors in this matter were sequestered, it was the feeling of this Court that the request of the defense was without merit."
*327 This bill is clearly without merit. The trial court is authorized by La.C.Cr.P. art. 783 to excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror. State v. Witherspoon, 292 So.2d 499 (La.1974). Further, the defense has no standing to complain of how the state exercises its peremptory challenges. State v. Melton, 296 So.2d 280 (La.1974); State v. Smith, 263 La. 75, 267 So.2d 200 (1972).
BILL OF EXCEPTIONS NO. 43
Prior to the calling of the first witness, the defendants were advised by the state that it intended to use oral inculpatory statements. The defendants then moved that the contents of any such statement be reduced to writing and turned over to the defense prior to proceeding. To the denial of this motion, Bill of Exceptions No. 43 was reserved.
La.C.Cr.P. art. 768 requires that the state provide the defendant with written notice if it intends to introduce a confession or inculpatory statement in evidence. The notice requirement is part of a statutory scheme designed to apprise the defense of the state's intention without having the notice incorporated in the state's opening statement to the jury, La.C.Cr.P. art. 767, with its inherent prejudice to the defendant should the statement later be held inadmissible. State v. Sneed, 316 So.2d 372 (La.1975).
The present case was tried prior to the clarification of the nature of the notice required under La.C.Cr.P. art. 768 enunciated by this Court in State v. Sneed, supra.
The notice requirement does not create any substantive right on the part of the defendants to require the state to reduce the testimony of its witnesses to writing for inspection; nor does it alter the general rule applicable at the time of the trial of this case that the defense is not entitled to pre-trial inspection of oral inculpatory statements. State v. Major, 318 So.2d 19 (La.1975).
This bill is without merit.
BILLS OF EXCEPTIONS NOS. 44, 83,90,91,92 and 93
These bills of exceptions relate to the testimony of James Knight and Sandra Decker as to their participation and/or involvement in the Corso murder and the conversations of the defendants in their presence.
Bills of Exceptions Nos. 44 and 93 were reserved to denials of motions to sever the trials of the defendants. Bill of Exceptions No. 83 was reserved when James Knight was allowed to relate the substance of a conversation with the defendants which occurred on the way to the Corso residence the night of the murder. Bill of Exceptions No. 90 was rendered moot, as the question to which it was addressed was not answered by the witness. Bills Nos. 91 and 92 were reserved when Sandra Decker was allowed to relate what James Knight said to her immediately upon returning from the Corso residence.
Defense counsel relies upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny for the proposition that an oral confession made out of court by a defendant, incriminating himself and other co-defendants, cannot be used at a joint trial wherein the defendant exercises his Fifth Amendment right not to testify without depriving the implicated co-defendants of their Sixth Amendment right to confrontation.
We do not find Bruton, nor the other cases cited by appellants, controlling under the facts of this case.
Bruton, supra; Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968); and Atwell v. United States, 398 F.2d 507 (5th Cir. 1968) all involved confessions resulting from custodial interrogations by police officers which implicated *328 the jointly-tried co-defendant. In each case the court additionally found that the confessor's statement implicating the co-defendant "* * * added substantial, perhaps even critical, weight to the Government's case in a form not subject to crossexamination * * *." Atwell v. United States, 398 F.2d at 510, citing Bruton, supra, 391 U.S. at 128.
Later cases decided by the United States Supreme Court and the federal courts of appeals have carved out a clear exception to the Bruton rule in cases involving a recognized exception to the hearsay exclusionary rule. In such case, the defendant's right to confrontation is not violated.
Bruton itself recognized this distinction in a footnote, wherein the Court stated:
"We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence [citations omitted] * * *. There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause, [citations omitted]." 391 U.S. at 128, 88 S.Ct. at 1624.
The United States Supreme Court answered the question it had pretermitted in Bruton in Button v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). Dutton involved a Georgia prosecution wherein the defendant, Evans, was tried for the murder of three police officers. The principal witness against him, Truett, was an alleged accomplice who had been granted immunity from prosecution to secure his testimony.
Truett described at length and in detail the circumstances surrounding the murder of the police officers. He testified that he, along with Evans and one Williams, had been engaged in switching license plates on a stolen car when they were accosted by three police officers. Evans managed to grab the pistol from the holster of one of the officers. Evans and Williams then disarmed the other two officers at gunpoint, handcuffed the three officers together, took the officers into the woods and murdered them by firing several shots into their bodies at extremely close range. Truett was subjected to cross-examination by defense counsel.
Shaw, a prosecution witness who was a fellow prisoner of Williams when Williams was brought in to be arraigned, testified that when Williams was returned to the penitentiary from the arraignment, he asked Williams: "How did you make out in court?" Shaw stated Williams responded, "If it hadn't been for that dirty son-of-a-bitch Alex Evans, we wouldn't be in this now." Defense counsel objected to the introduction of this testimony upon the ground that it was hearsay and thus violative of Evans' right of confrontation. After the objection was overruled, counsel cross-examined Shaw at length.
The Georgia Supreme Court affirmed, applying a Georgia rule that the declarations by one conspirator are admissible against all. The rule further states that as long as the conspiracy to conceal the commission of a crime or the identity of the perpetrators of the offense continues, the declarations of any are admissible against all others.
The United States Supreme Court first held that the confrontation clause of the Sixth Amendment (made obligatory on the States by the Fourteenth Amendment) does not require the exclusion of all hearsay evidence. Dutton v. Evans, 400 U.S. at 80, 94 S.Ct. 210. The Court further recognized that the Georgia co-conspirator hearsay exception was broader than the comparable co-conspirator exception applied in federal courts.[2]
*329 The Court found that the expanded hearsay exception applied by the Georgia courts did not violate the defendant's constitutional right to confront the witnesses against him. Bruton was distinguished on the ground that the confession there introduced was concededly wholly inadmissible against the petitioner. The trial judge instructed the jury that the confession was evidence only against petitioner's co-defendant and should not be considered as evidence against petitioner, despite the fact that the statement incriminated Bruton. The Dutton Court noted:
"The primary focus of the Court's opinion in Bruton was upon the issue of whether the jury in the circumstances presented could reasonably be expected to have followed the trial judge's instructions." 400 U.S. at 86, 91 S.Ct. at 218.
It was further noted that there was no recognized exception to the hearsay rule before the Court in Bruton, citing the footnote from Bruton quoted above. In further distinguishing Bruton and other cases involving the confrontation clause, the Court noted:
"This case does not invoke evidence in any sense `crucial' or `devastating,' as did all the cases just discussed.
"* * *
"Evans was not deprived of any right of confrontation on the issue of whether Williams actually made the statement related by Shaw. Neither a hearsay nor a confrontation question would arise had Shaw's testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements. From the viewpoint of the Confrontation Clause, a witness, under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard." 400 U.S. at 87, 88, 91 S.Ct. at 219.
The United States Supreme Court then noted that because of the factors surrounding the making of the statement by Williams to Shaw and the indicia of reliability pertinent thereto, there was no denial of the right to confrontation even though the jury could infer that Williams had implicitly identified Evans as the perpetrator of the murder when he blamed Evans for his predicament. The Court stated:
"The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that `the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' California v. Green, 399 U.S. [149], at 161, 90 S.Ct. [1930], at 1936 [26 L.Ed.2d 489]. Evans exercised, and exercised effectively, his right to confrontation on the factual question whether Shaw had actually heard Williams make the statement Shaw related. And the possibility that cross-examination of Williams could conceivably have shown the jury that the statement, though made, might have been unreliable was wholly unreal." 400 U.S. at 89, 91 S.Ct. at 220.
In Kay v. United States, 421 F.2d 1007 (9th Cir. 1970), it was held that the confrontation *330 clause is not violated by admitting into evidence against appellant the extra-judicial statements of a co-defendant made during the perpetration of the crime. See also United States v. Lawler, 413 F.2d 622 (7th Cir. 1969) (declarations of a co-conspirator in furtherance of a conspiracy are admissible as an exception to the hearsay rule, even when no conspiracy is charged); United States v. Rizzo, 418 F.2d 71 (7th Cir. 1969) (statement of co-conspirator related by third person implicating defendant did not violate confrontation clause when made in furtherance of conspiracy).
The recent case of United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) is also pertinent. In that joint trial of several former governmental officials and presidential campaign officials on charges including conspiracy to defraud the United States and to obstruct justice, the United States Supreme Court reaffirmed the validity of Dutton, supra,[3]
While we find ample evidence of a conspiracy in the case at bar which would render the above rule applicable, La.R.S. 15:455, we prefer to base our ruling on other grounds. Cf. State v. Hodgeson, 305 So.2d 421 (La.1974).
Applying these rules to the present case, we must determine whether the testimony of the witnesses, Knight and Decker, constitute hearsay evidence. If we find the testimony to be hearsay, we must then determine whether the evidence falls within one of the recognized exceptions to the hearsay rule.
We first consider the testimony of James Knight.
Knight testified that prior to the Corso murder he, along with defendants Fulford and Nix, rode around New Orleans looking at houses to be burglarized. Defendant Mule was also along on some of these rides. The next evening, all three defendants and Knight went to view the Corso residence. Knight, over objection, related the substance of the conversation in the car during this period. Knight testified that the general nature of the conversation was:
"Same as usual. They were talking about what a score was supposed to be, things like that nature. There is no way for me to remember precisely what was said."
Knight then proceeded to describe how the defendants circled the block, and discussed where to park the car. He stated that: "[s]ometime I was told they had a police radio in the car and for me to listen for a call on 64-G." He was told if he heard such a call to come around the block and blow the horn. The defendants told Knight to let them out on the corner. Knight then let the defendants out of the car and circled the block. The defendants were observed by Knight to be armed. Knight testified that one of the defendants also carried a small bag which looked like a bowling bag, the contents of which he did not know. Knight described waiting some 30 to 40 minutes before he heard gunshots; a few minutes later, defendant Fulford came running around the corner. *331 Knight testified that Fulford told him that Junior (Nix) had been shot and instructed him to pull around the corner. Knight then pulled around the corner and observed defendant Mule in a vacant lot. Knight testified that Mule got into the car, stated that Junior (Nix) was laying out in the vacant lot, and instructed Knight "to pull around the corner where they could get him into the car." Knight then pulled around the corner and observed Nix out in the lot crawling towards the car. Fulford and Mule then got out of the car and assisted Nix into the back seat. Mule then told Knight to back up to the corner, which he did. Knight testified that Mule then told him to go straight down a back street, driving at just a normal speed. Knight then related the conversation which occurred as they drove down the street as follows:
"Well, naturally, I asked what happened, and they was all talking at one time, more or less discussing what had happened. And they told me that they were at the back door of this house, and there was a lady come into the kitchen and noticed the door being cracked, or something of that nature; and came over, and tried to close the door, and when she did, Junior started kicking the door. * * * They got the door open; they had to kick it three or four times to get the door open. From what they told me, Junior and Mule went into the front room of the house, and there was a hallway down through the house; and they had went in there, and Junior said don't nobody do nothing foolish and nobody get hurt. About that time, Mr. Corso came out of the bedroom and started shooting at them, and they returned the fire, and Junior was hit. And there was an exchange of gunfire.
"Fulford left the house to come and get me, and Pete helped Nix from the house."
Knight then testified that Mule and Nix told him they were sure they had shot Mr. Corso; he was told to get rid of the car because someone could have gotten the license number.
Knight then described his activities later that evening. He testified that he went to Nix's apartment and observed Nix in bed with a bullet wound in his chest. He testified that Nix said he was feeling all right and that he had taken some Darvon for pain. Knight then described his activities further without reference to any significant statements which could tend to inculpate the defendants. He stated that the defendants had gotten in touch with someone in Dallas to take Nix to a doctor in Dallas, but the source of the information was not disclosed. Knight described how he and Fulford disposed of Nix's and Mule's clothes and one of the weapons by throwing them into Lake Pontchartrain. He further testified that he and Fulford then left New Orleans for Atlanta.
Knight was fully cross-examined by defense counsel, who vigorously attacked his credibility.
The testimony of the witness, James Knight, has been set forth in detail to demonstrate that the statements of the defendants related by him fall primarily into two categories: statements regarding things in which the witness participated or observed and therefore had personal knowledge, and the statements of the defendants in the car fleeing the scene which described the events inside the Corso home.
As to the former class of statements, we find them to be within the personal knowledge or observation of the witness and therefore non-hearsay. As to the description of the activities within the Corso home, we find the res gestae exception to the hearsay rule applicable.

Res gestae is defined in La.R.S. 15:447 as follows:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, *332 impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
Here the statements related by Knight were made by the defendants within minutes of the shooting, while the event was still in progress, to a confederate under the pressure of attempting to escape from the scene. We find that the statements were "the instructive, impulsive and spontaneous words and acts of the participants," and thus within the res gestae exception to the hearsay rule. The statements were therefore admissible under Louisiana law. State v. Richmond, 278 So.2d 17 (La.1973).
The res gestae exception, when properly applied, insures the reliability of the statement by providing that only those incidents occurring "under the immediate pressure of the occurrence" are admissible, thus minimizing the possibility of thoughtful fabrication.
We further hold that statements properly admitted under the res gestae exception to the hearsay rule do not deprive these jointly tried defendants of their Sixth Amendment right to confrontation.
The res gestae exception is comparable to several traditionally recognized common-law exceptions to the hearsay rule. See our discussion in State v. Jacobs, 281 So.2d 713 (La.1973). Most res gestae statements fall within the common-law "spontaneous utterance" exception to the hearsay rule.
In this case, the res gestae statements related by James Knight were made in the presence of all three defendants. We find the case remarkably similar to the Dutton case, supra, in which the United States Supreme Court found no violation of the defendants' right of confrontation.
We next consider the testimony of Sandra Decker. Ms. Decker, the self-described girlfriend of defendant, John Fulford, testified to what James Knight told her immediately upon his return from the Corso residence. She testified that James Knight told her that Kirksey Nix had been shot at the Corso residence, and that Knight didn't know if the kids had been hurt, since he was in the car.
She also testified that John Fulford told her that Nix had been shot and that he, Fulford, had nearly been shot. She further related that Fulford told her that he didn't know if anyone in the house had been shot. Sandra Decker was also crossexamined vigorously by defense counsel.
Regarding the statement attributed to James Knight, the testimony served a valid, non-hearsay purpose. At the point in the trial where Ms. Decker's testimony was elicited, James Knight had just finished testifying. He was, as previously noted, subjected to extensive cross-examination designed to impeach his credibility. The testimony of Sandra Decker that Knight told her of the incident on the night of the Corso murder immediately upon the return of the defendants and Knight serves to substantiate Knight's trial testimony that he was at the scene of the Corso murder and therefore in a position to relate the facts to which he testified at trial. The fact that the statement was made, at the time and place described by Ms. Decker, was relevant independent of the truth of the content of the statement.
The substance of the statement, of course, had just been related by James Knight in his own testimony,' subject to cross-examination. We therefore find that any prejudicial effect which might occur to the defendants should the jury consider Sandra Decker's testimony as evidence of the truth of the contents of James Knight's statements to be minimal, and outweighed by the non-hearsay, relevant purpose described above.
*333 Regarding the statements attributed by Ms. Decker to John Fulford, the trial court held the statements admissible as part of the res gestae. While we find the ruling to be correct, we disagree with the trial court's reasoning. The testimony of the witness regarding what John Fulford told her approximately one half hour after his return from the Corso residence constituted a narration of the events which is excluded from the definition of res gestae quoted above.
The testimony was, of course, admissible as to John Fulford as an admission, a recognized exception to the hearsay rule. La.R.S. 15:449. The statement was properly admitted into evidence against John Fulford.
The significant further question which must also be asked is whether the admission of this statement into evidence deprived either of Fulford's co-defendants of his constitutionally protected right of confrontation.
Fulford's statement was non-incriminatory as to the defendant, Peter Frank Mule, as he was not even mentioned by Fulford. Therefore, Peter Frank Mule was not denied his right of confrontation.
As to defendant, Kirksey McCord Nix, Jr., the statement that Nix was shot was, of course, a fact within the power of the witness to observe. The fact that the observation was rendered by reciting a statement of John Fulford did render the statement hearsay as to Kirksey McCord Nix, Jr.
We find the Dutton case controlling. The United States Supreme Court in Dutton held that there is no denial of the right to confrontation in the admission of a statement like that here in question even if that statement incriminates the petitioner, provided the petitioner is afforded the right to cross-examine the person relating the statement to determine his opportunity for observation and knowledge as well as his veracity.
The indicia of reliability in the present case are even stronger that those in Dutton. Dutton involved a statement made after the defendant had been taken into custody. Here the statement attributed to Fulford was made at a completely non-suspicious time. The witness, Sandra Decker, who relayed Fulford's statement was subjected to vigorous cross-examination to test her opportunity to have heard the statement, as well as her credibility. We find no violation of the right of confrontation of the defendant, Kirksey McCord Nix, Jr.
Defense counsel, in brief, also places reliance on the decisions of this Court in State v. Anderson, 260 La. 113, 255 So.2d 348 (1971), and State v. Wright, 254 La. 521, 225 So.2d 201 (1969).
Both of these were classic Bruton-type cases. Each involved confessions resulting from custodial interrogations which would have been inadmissible hearsay when applied against a jointly tried co-defendant. In each case, the confession inculpated the co-defendant. The trial court in each case, through limiting instructions, directed the jury to consider the confession only as evidence of guilt of the confessor, and not against his co-defendant. Both of these cases are distinguishable from the present case for the same reasons assigned by the United States Supreme Court in Dutton in distinguishing Bruton, which are set forth above.
Our recent decision in State v. Herman, 304 So.2d 322 (La.1974) is also distinguishable. The statement there in question was exculpatory as to the defendant who made the statement. It was highly inculpatory as to his co-defendant in that it supplied an essential element of the state's case which was not established by any other evidence in the case. The statement in Herman also resulted from custodial interrogation, *334 and had none of the indicia of reliability found in the present case.
We find no merit in these bills of exceptions.
BILL OF EXCEPTIONS NO. 45
This bill relates to the overruling of a defense objection to the admissibility of the death certificate (Exhibit P-2) and a certified copy of the procés verbal of the autopsy (Exhibit P-1) performed on the body of Frank Corso. These exhibits were identified as authentic by the Assistant Coroner under whose direction the documents were prepared and whose signature appeared thereon.
The exhibits were properly admitted in evidence. La.R.S. 15:457. The bill also refers to document 19-B. There was no such document offered in connection with the witness' testimony. The reference is to line 19-B of Exhibit P-2, the death certificate, upon which is recorded the cause of death. The trial court maintained the defendants' objection to line 19-B and ordered it stricken from the document. Thus, that portion of defendants' objection was maintained, and is not now cause for complaint.
This bill is without merit.
BILL OF EXCEPTIONS NO. 46
This bill was reserved when the trial court refused to admit into evidence a police report prepared in part by Officer Rhett Magnon.
Officer Magnon testified at trial, subject to cross-examination. Any discrepancies between the report and the trial testimony of Officer Magnon were fully exploited by defense counsel on cross-examination.
The narrow point of this bill is that the report itself was not admitted into evidence. The record reflects that the report in question was a compilation of the notes of three police officers composed by a police lieutenant and typed by a fifth person. At the time the report was offered for admission into evidence, only Officer Magnon had testified. The report therefore contained inadmissible hearsay, and was properly excluded by the trial court. La.R.S. 15:434.
The cases cited in brief by defense counsel are inapposite. They deal primarily with the issue of pretrial discovery of police reports, not their admissibility in evidence.
The bill is without merit.
BILLS OF EXCEPTIONS NOS. 47 and 48
When the trial court ruled admissible photographic Exhibits P-6 and P-3A, these bills were reserved.
Exhibit P-6 depicts the bullet wounds in the body of Mr. Corso declared to be the cause of his death. Exhibit P-3A, a portion of a larger photograph ruled inadmissible, depicted the head only of Mr. Corso for identification purposes.
The trial court ruled inadmissible tendered photographs marked P-3, P4 and P-5. These autopsy photographs of the body of Mr. Corso depicted not only the bullet wounds of the victim, but also incisions which were made by the coroner in performing his autopsy. The grounds for the objection to admitted exhibits P-6 and P-3A were their alleged irrelevance.
Evidence is relevant when it tends to show the commission of the offense. La.R.S. 15:441. The photographic exhibits to which this bill is addressed demonstrate the identity of the decedent and the wounds found to have caused his death. They were therefore relevant, as they tended to show the commission of the offense charged.
*335 Not all relevant evidence, however, is admissible in evidence. Where the probative value of photographs or other evidence is slight and their potentially inflammatory and prejudicial effects great, courts will, in the interest of justice, exclude otherwise relevant evidence.
Our able trial brother exercised the discretion vested in him to exclude three tendered exhibits in the present case because he found their probative value was outweighed by their inflammatory potential, as required by the jurisprudence. State v. Chavers, 294 So.2d 489 (La.1974); State v. Bary, 292 So.2d 697 (La.1974).
We have reviewed the exhibits which are the subject of these bills of exceptions. We find no abuse of discretion on the part of the trial court in admitting them into evidence.
The bills are without merit.
BILLS OF EXCEPTIONS NOS. 49 and 50
These bills were reserved to the discussion of items of evidence and their alleged display to the jury prior to being admitted into evidence. These items were subsequently admitted into evidence, rendering these bills of exceptions moot. State v. Batiste, 318 So.2d 27 (La.1975).
BILL OF EXCEPTIONS NO. 51
When a police officer-witness referred to certain plastic strips found in a satchel near the scene of the crime as "handcuffs," this bill was reserved.
Later testimony clearly established that the plastic banding strips were, in fact, utilized by law enforcement officials as a form of portable handcuff. The reference to "handcuffs" was therefore factual and proper.
This bill is without merit.
BILLS OF EXCEPTIONS NOS. 52, 53 and 55
These bills were reserved as a result of the overruling of the defendants' objection to the qualification of a witness as an expert in the field of firearms identification (Bills Nos. 52 and 53) and to the admissibility of evidence offered by this witness (Bill No. 55).
The expert witness had four years practical experience in the field of firearms identification at the time of his testimony. He had also studied the available manuals on the subject. The expert testified that there are few, if any formal courses available in firearms identification, expertise being generally gained through field experience. The witness had previously been qualified as an expert in the field in both state and federal courts.
We find that the witness had sufficient formal training and practical experience from which the trial court could properly conclude that the witness was an expert in the field in which he was tendered. We find no abuse of discretion in the ruling of the trial court in relation to Bills Nos. 52 and 53. This being so, the objection to the evidence introduced through the witness (Bill No. 55) is likewise without merit. La.R.S. 15:466. State v. Vassel, 285 So.2d 221 (La.1973); State v. Francis, 285 So.2d 191 (La.1973).
BILL OF EXCEPTIONS NO. 54
This bill was reserved when the trial court allegedly denied "the motion of defendants to strike the testimony of the witness or in the alternative to be allowed sufficient opportunity to have an expert examine the weapons and pellets so effective cross-examination could be continued." No such motion appears in the record.
*336 The record reflects an oral motion by defense counsel West as follows:
"May the Court please, at this time, on behalf of the defendants we would move the Court to withdraw its previous determination that this officer is an expert in his field as propounded by the State of Louisiana."
This is the motion that forms the basis for Bill of Exceptions No. 53, treated above. Mr. West then proceeded to argue his motion. The trial court asked the state for argument. Following the state's argument, Mr. West asked to comment further. Defense counsel Mancuso followed with argument which elaborated the argument previously made by Mr. West. We have reviewed Mr. Mancuso's argument very carefully and nowhere therein do we find any motion addressed to the court.
After an argument occupying in excess of two pages in the transcript, addressing itself primarily to alleged inadequacies in the expert testimony, the lack of photographs of the striation marks and the difficulties created on cross-examination by this lack of photographs, and the alleged lack of expertise on the part of the witness, Mr. Mancuso concluded:
"Now either we can strike his testimony or at least allow sufficient opportunity to have an expert examine the weapons and examine the pellets so we can effectively cross examine him, the witness. Thank you."
In its per curiam to this bill the trial court states:
"* * *. Also, the point raised about the examination of the weapons and the pellets appeared to be an afterthought and was made only in minor reference at the end of the examination [argument]. Had counsel for defendant asked for a continuance [recess] for sufficient time to examine the pellets, I would have allowed him to do so. * * *"
Clearly, defense counsel's statement in support of co-counsel's argument against the qualifications of the police officer witness as an expert did not constitute a motion to the trial court.
We find no merit in this bill.
BILL OF EXCEPTIONS NO. 56
This bill was reserved to the ruling of the trial court qualifying a state witness as an expert in the field of blood identification and analysis.
The witness testified that he has a B.S. degree in biology with a minor in chemistry. He did blood identification in school and in the Army medical laboratory, where he was a medical laboratory specialist. He also had three and one-half years practical experience in which he performed over one thousand blood identifications.
The transcript fully supports the trial court's ruling. The bill is without merit.
BILL OF EXCEPTIONS NO. 57
This bill was reserved when the trial court overruled an objection by defendants to the following question:
"Where is Soldier Street. Do you see Soldier Street on the map?"
The ground stated for the objection was that the question was leading. The question does not suggest an answer and therefore is not leading. La.R.S. 15:277. The ruling of the trial court was correct.
BILL OF EXCEPTIONS NO. 58
The per curiam of the trial judge adequately disposes of this bill:
"This bill relates to the Court allowing the State to ask additional questions of a witness after the District Attorney had *337 announced to the defense attorney, `Your witness.'
"As shown in the transcript of the testimony of this trial, the State had tendered the witness to the defense and the defense stated that they had no questions at this time. Then the District Attorney stated that he had one additional question he wanted to ask the witness. This Court deems that in a sense of fair play that it allows either side to ask an additional question when they reach a situation where it has escaped their mind. Had the situation been reversed, this Court most certainly [would] have permitted the defense counsel to ask any additional questions."
The objection addressed itself to the sound discretion of the trial court. We find no abuse of that discretion in the bill presented.
BILLS OF EXCEPTIONS NOS. 59, 60, 69, 70, 71 and 72
These bills all relate to objections by defense counsel to certain state exhibits and physical evidence on the basis that no sufficient foundation for the introduction of the evidence was established.
In his per curiam, the trial judge states:
"[These bills relate] to defense counsel objecting to the offering of certain exhibits into evidence by the State, which objection was overruled.
"I was satisfied that the proper foundation had been laid for the introduction of these exhibits. I submit that a reading of the entire transcript should bear out the fact that the proper basis for the receiving of these items into evidence has been covered."
We have painstakingly reviewed the record and find that a sufficient chain of evidence was established for each of the twenty-one exhibits and items of physical evidence objected to in these bills of exceptions.
These bills are all without merit.
BILL OF EXCEPTIONS NO. 61
When the trial court denied a motion to strike certain testimony previously elicited from a state witness under cross-examination on the ground that it constituted hearsay evidence, this bill was reserved.
The law of Louisiana clearly requires a contemporaneous objection if an irregularity or error in the proceeding is to be of avail after the verdict. La.C.Cr.P. art. 841; State v. Hillman, 298 So.2d 746 (La.1974). The failure of a party to object timely results in a waiver of the right of the objecting party to attack the verdict on the grounds of the alleged error. State v. Refuge, 300 So.2d 489 (La.1974). The "motion to strike" is unknown in the criminal law of Louisiana, and presents nothing for review. State v. Isaac, 261 La. 487, 260 So.2d 302 (1972).
BILL OF EXCEPTIONS NO. 62
During the course of trial, defense counsel produced three porto-power jacks in court to demonstrate that such equipment is readily available. Following testimony to that effect, defense counsel tendered the porto-power jacks into evidence. The state objected, arguing that the jacks had no evidentiary connection with the case, other than for demonstrative purposes. The trial court sustained the objection and Bill of Exceptions No. 62 was reserved.
The trial court's ruling was correct. No foundation was laid to connect these other jacks with the case under consideration. Bill of Exceptions No. 62 lacks merit.
*338 BILL OF EXCEPTIONS NO. 63
The trial court's per curiam fully answers this bill of exceptions. We adopt it as our own:
"This bill relates to the Court overruling defense counsel's objection to the introduction of an item bearing serial number AZ-1200, which objection was based on the fact that the item was not listed on the return of a search warrant.
"The officer who executed the search warrant and made the return testified that the two parts were attached together and that he saw a serial number on one of the parts and he listed that one serial number. He further testified that he could see that the parts could be removed, but that he did not want to tamper with the evidence any more than necessary. For that reasons, he listed the two parts which were attached as one part. Defense counsel complains that since the two parts each had a serial number and could be detached that it was necessary that both parts be listed on the return on the search warrant before they could be introduced into evidence. I did not agree with defense counsel because the item was identified by a serial number on the part that was attached thereto. If I were to follow the logic of counsel for defendants, if you seize an automobile, for example, before you could get the tires into evidence, the search warrant return should have listed the serial number of the tires as well. I was satisfied that the item was properly listed on the return, and admitted it into evidence."
The per curiam of the trial court convinces us that there was no abuse of discretion in the ruling of the court.
The bill lacks merit.
BILL OF EXCEPTIONS NO. 64
This bill was reserved by the defense when the trial court overruled defense counsel's objection to the admissibility of exhibits P-82, P-82A, P-83, P-83A and P-84. The bases for the objections were that the items were irrelevant, incompetent and immaterial evidence. The trial judge's per curiam disposes of these objections:
"The exhibits marked P-82, P-82A, P-83, and P-83A were the original sales slips and copies [thereof] of the alleged Porto-Power tool which was allegedly sold to defendant Mule. These exhibits were properly identified by the salesperson who testified that she sold this to defendant Mule. P-84 was a composite photograph of defendant Mule which the witness * * * stated was drawn as to her instructions by a police officer for purposes of identifying Mr. Mule as the person to whom she sold the jack."
We find that the trial court was clearly correct in its ruling. The evidence was highly relevant to a contested issue in the case: the identity of defendant Mule as a purchaser of a tool substantially identical to that used to forcibly enter the Corso home. La.R.S. 15:441.
This bill is meritless.
BILL OF EXCEPTIONS NO. 65
This bill was reserved to the denial of a motion for a mistrial by the defendants based upon exhibition to the jury of a tennis shoe which had previously been suppressed.
The motion was made after several witnesses had testified subsequent to the witness who described the tennis shoe. The witness, an expert in blood identification, testified that the tennis shoe contained blood. There was not enough blood, however, to determine if it was human or animal blood, nor enough to group the blood. The testimony was cumulative with several other exhibits containing blood which were properly introduced, some of which contained enough blood to permit analysis.
*339 La.C.Cr.P. art. 775 provides, in part:
"A mistrial may be ordered, and in a jury case the jury dismissed, when:
"* * *
"(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
"* * *
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, * * *."
Dealing first with the mandatory grounds for mistrial in the last paragraph of Article 775, quoted above, we must determine whether the conduct here in question was so prejudicial as to make it impossible for the defendants to obtain a fair trial. We conclude that it was not.
Officer Strata, qualified as an expert in the field of blood identification, testified concerning the tests performed by him on certain items recovered from the apartment at 4101 Davey Street. Officer Strata identified stains on a sheet, the tennis shoes, and a mattress as blood. Because of the small quantities available on these items, it was impossible to determine whether the blood was human or animal, and it was impossible to determine the blood grouping. Officer Strata then identified stains on a piece of carpet and gauze pads found in the same apartment as Group A human blood (the same type blood as that of defendant, Kirksey McCord Nix, Jr.).
The identification of the stain on the tennis shoes as blood was purely cumulative, as there were four other blood-stained items recovered from the same apartment and properly introduced into evidence. Further, the stain on the tennis shoes was not of sufficient quantity to obtain a blood grouping, thus further minimizing the prejudicial effect of reference to the tennis shoes before the jury. We find the trial court was correct in stating in its per curiam:
"I might add that the tennis shoes played little or no significant part in the trial as I recall."
We have determined that the exhibition of the tennis shoes was harmless error (La.C.Cr.P. art. 921), and did not prejudice the defendants in obtaining a fair trial. We must further consider whether the display of this item to the jury, which had been previously ordered suppressed because it was obtained during an unconstitutional search and seizure (La.C.Cr.P. art. 703), constitutes "a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law." La.C.Cr.P. art. 775(3), supra.
At issue is the scope of the "exclusionary rule" enunciated by the United States Supreme Court in dealing with the fruits of unconstitutional searches and seizures. The United States Supreme Court, however, has clearly recognized that the admission of physical evidence wrongfully obtained does not mandate the reversal of a conviction where the error was harmless to the defendant in the context of the case. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This holding has been consistently followed by the intermediate federal courts. United States v. La-Vecchia, 513 F.2d 1210 (2d Cir. 1975); Reed v. Wolff, 511 F.2d 1369 (8th Cir. 1975); Nelson v. Moore, 470 F.2d 1192 (1st Cir. 1972); Young v. Maryland, 455 F.2d 679 (4th Cir. 1972); Leake v. Cox, 432 F.2d 982 (4th Cir. 1970).
We therefore conclude that the display of the tennis shoes to the jury does not constitute a legal defect in the proceedings which would make any judgment entered *340 upon the verdict reversible as a matter of law. This bill does not demonstrate reversible error.
BILL OF EXCEPTIONS NO. 66
This bill was reserved when the trial court overruled defense counsel's objection to the following question:
"I direct your attention to the location of 4802 Pontchartrain Boulevard in the City of New Orleans. I ask you have you had an occasion, in your occupation, to conduct a surveillance of those premises?"
The ground stated for the objection was that the question is leading. We do not deem the question objectionable. La.R.S. 15:277 defines a leading question as "one which suggests to the witness the answer he is to deliver." A question which does not indicate the answer expected, but merely directs the attention of the witness to the subject in relation to which the witness is to testify, is not a leading one. State v. Duncan, 8 Rob. 562 (La. 1844).
The bill is without merit.
BILL OF EXCEPTIONS NO. 67
This bill was reserved to the overruling of defense counsel's objection to the relevancy of testimony concerning a police surveillance of the apartment located at 4802 Pontchartrain Boulevard in January and February of 1971, some two months before the crime in question. The district attorney advised the trial court at the time of the objection that he would establish the relevancy through additional questions. The trial judge then overruled the objection.
Later questions established that one of the defendants, Peter Mule, occupied the apartment in question with one Betty Anderson. The apartment was later searched, pursuant to a proper warrant, and several items of physical evidence were seized therefrom.
La.R.S. 15:441 states that "facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible." The basis for the police being able to connect this particular apartment with one of the defendants is clearly covered by the statutory language quoted above. The testimony was relevant.
BILL OF EXCEPTIONS NO. 68
This bill pertains to an objection raised in the middle of a question by the district attorney. The question was not completed, nor was the reason for the objection stated. No answer was given to the question. The bill of exceptions is therefore moot, as nothing is presented to us for review.
BILL OF EXCEPTIONS NO. 73
This bill is explained and disposed of by the per curiam of the trial judge:
"This bill relates to the Court maintaining State's objection to cross examination of one of the State's witnesses.
"The defense was interrogating the State's witnesses concerning a key he used to get into an apartment from which certain items, [as to] which the State had examined him, had been secured. The State objected to defense counsel's examination concerning the key used to get into the apartment because the key was not involved in the search warrant upon which the items were received. I felt that it was completely irrelevant that the defense counsel was questioning the witness about the key."
We find no abuse of discretion in the ruling of the trial court.
The bill is without merit.
*341 BILL OF EXCEPTIONS NO. 74
This bill was reserved to the denial of a motion by defendant Nix to enroll additional out-of-state counsel as counsel of record. These attorneys were not present in court.
The trial court stated that the motion would be considered if and when these attorneys were presented to the court. The trial court did enroll Mr. Kirksey M. Nix, Sr., a member of the Oklahoma bar, as counsel of record for defendant, Kirksey M. Nix, Jr., when he was properly presented to the court, as well as enrolling Mr. Roehm West, also of the Oklahoma bar, as counsel for all three defendants.
We find no abuse of discretion on the part of the trial court in requiring an outof-state attorney to be presented to the court prior to enrolling as counsel of record.
This bill is without merit.
BILL OF EXCEPTIONS NO. 75
This bill relates to the in-court identification of Peter Mule by a State's witness. The context in which the question arose is as follows:
The witness testified that he was a pilot. On April 11, 1971, he stated he was hired to fly a man from New Orleans to Dallas. When the man was brought to his plane, he noticed that he appeared to have been shot in the chest. The witness identified the wounded man as Kirksey M. Nix, Jr.
The witness testified that there were several people at the airport in New Orleans with Nix. He was then asked if he knew a person by the name of Peter Mule. The witness indicated he knew Mule from the court proceedings in New Orleans. The witness was asked if he could identify Mule as having been at the Lakefront Airport in New Orleans. He replied, "It could have been, it could not have been; it was dark and I was just there for a second."
The district attorney then moved behind Mr. Mule and asked, "I direct your attention to the man I am standing behind in the suit . . . ." At that point defense counsel objected, due to the witness having previously expressed doubt as to whether Mule was at the airport. The objection was overruled and this bill was reserved. The witness then reiterated that he was unsure if Mule was one of the persons at the airport.
While the procedure employed was clearly suggestive, it did not substantially prejudice the defendant as no identification was made. La.C.Cr.P. art. 921. No reversible error is demonstrated by this bill.
BILLS OF EXCEPTIONS NOS. 76, 77 and 78
These bills were reserved to rulings of the trial court admitting into evidence Exhibits P-106, P-107, P-104, P-92, P-93, P-90, P-98, P-91 and P-87.
We have searched the transcript and find these bills to be meritless. The objection to P-106 and P-107 was on the basis of alleged irrelevancy. P-106 was a photograph of Sandy Nix, wife of defendant, Kirksey M. Nix, Jr., which was identified by a witness as being a picture of the woman who accompanied Nix to his plane in the New Orleans Airport. P-107 was a gasoline receipt signed by the pilot who testified, establishing his presence at the New Orleans Airport on the night of April 11, 1971. P-104, P-92, P-93, P-90, P-89 and P-91 were also objected to on grounds of irrelevancy. The items are rental receipts for the apartments rented by Sandra Nix and by John Fulford and James Knight, which were later searched pursuant to search warrants. The rent receipts, as well as the identifications of the *342 individuals concerned, were highly relevant. Finally, Exhibit P-87 was objected to on grounds of alleged irrelevancy. The exhibit was the rent record card for the apartment at 4802 Pontchartrain Boulevard occupied by defendant Mule and Betty Anderson. The apartment was later searched pursuant to a valid search warrant. The rent record card establishing the identity of the lessee was highly relevant.
BILLS OF EXCEPTIONS NOS. 79, 80, 81, 82 and 131
These bills all relate to X-ray studies of a pellet lodged in the pelvis of defendant Kirksey M. Nix, Jr. Bill No. 79 was reserved to the overruling of an objection on grounds of irrelevancy to any X-ray of Nix's pelvis showing a lodged pellet. That X-ray was then compared with a test Xray of pellets of known caliber to reach the conclusion that the pellet in Nix's pelvis was a .32 caliber, the same caliber as the gun owned by Frank Corso. Bill No. 81 was reserved when the trial judge overruled a motion by Mr. Mancuso to strike the testimony of the doctor. Bill No. 131 was reserved when the trial court allegedly denied a motion by Mr. West to enlarge upon the motion to strike by Mr. Mancuso. Bill No. 82 was reserved to the admission into evidence of the X-ray comparisons.
Bill No. 79 is clearly without merit. The actual X-ray of a bullet within the body of Mr. Nix, which could not be surgically removed without extreme risk, confirms that Mr. Nix was the victim of a gunshot wound. There was testimony by other witnesses which indicated that Mr. Corso had shot one of his assailants with a.32 caliber pistol. The relevancy of a series of test X-rays, employing pellets of known caliber, is therefore apparent. Bill No. 80 is without merit. The motion to strike the testimony of the doctor making the test on grounds of irrelevancy is likewise without merit. The conclusion of an expert witness that the pellet within the body of one of the defendants was of the same caliber as that fired from Mr. Corso's pistol is obviously relevant. Bill No. 82, a result of an overruled defense objection to the introduction of the X-rays themselves on grounds of irrelevancy, is likewise without merit. Bill No. 131 is clearly meritless, in that the trial judge told Mr. West that he was free to enlarge upon Mr. Mancuso's objection.
BILL OF EXCEPTIONS NO. 84
This bill was reserved when the trial court overruled defense counsel's objection to the following question as being a leading question:
"While you were in the car, did Nix say anything at all?"
The question does not suggest an answer, and is therefore not leading. La.R.S. 15:277.
The bill is without merit.
BILLS OF EXCEPTIONS NOS. 85 and 86
These bills were reserved when defense counsel attempted to question a state witness concerning arrests and pending charges, rather than convictions. The state's objections were sustained and these bills were reserved. The avowed purpose of the questions was to impeach the credibility of the witness by showing not only convictions, but arrests and presently pending charges. The trial court advised defense counsel that he would be allowed to question the witness regarding convictions, but not arrests or pending charges. Bill of Exceptions No. 85 was reserved to this ruling. The trial court then clarified its ruling by stating,
"* * * that the Court will allow you to question this witness insofar as all of the circumstances concerning his testimony, concerning this case. Again, I want my ruling to be perfectly clear:

*343 you cannot ask whether he has been arrested for other crimes."
Defense counsel asked: "Will I be able to question him on charges which are presently pending against him, Your Honor?"
The trial court responded: "Relative to this case, yes. Relative to any other case, no." Bill No. 86 was reserved to this ruling.
The rulings of the trial court were both correct. La.R.S. 15:495; State v. Prieur, 277 So.2d 134 (La.1973).
These bills have no merit.
BILLS OF EXCEPTIONS NOS. 87 and 88
These bills were reserved when the state objected to questions asked by defense counsel to a state witness under cross-examination, which objections were maintained by the trial court. The questions asked the witness to relate the substance of a conversation he had with investigating police officers. The court ruled that the witness could relate what he said during the conversation, but could not relate what was said by the investigating officers as this would amount to hearsay testimony.
To place the objection in context, we note that the witness, James Knight, gave extremely incriminating testimony against the defendants. Knight was originally indicted for Corso's murder along with the three appellants herein. Knight was granted immunity from prosecution to secure his testimony against appellants. Defense counsel was attempting to explore the conversations leading to the dismissal of the charges against Knight at the time these bills were reserved.
Hearsay evidence is evidence of an unsworn, out-of-court statement made by a person other than the testifying witness which is introduced to establish the truth of its contents. State v. Jacobs, 281 So.2d 713 (La.1973). Hearsay evidence is inadmissible, unless it falls within one of the recognized exceptions to the hearsay rule. La.R.S. 15:434; State v. Jacobs, supra.
The statements made to the witness Knight by investigating police officers have no relevance apart from the truth of their contents. They are therefore hearsay when related by the witness, Knight, and properly excluded unless they fall within one of the recognized exceptions to the hearsay rule. Defense counsel have pointed out no exception to the hearsay rule which would apply to the testimony sought to be elicited. Likewise, our research indicates that the trial court properly ruled that the testimony sought was inadmissible hearsay when related by the witness, Knight. The investigating officers were available to testify as to what they told James Knight during his interrogation.
These bills are without merit.
BILL OF EXCEPTIONS NO. 89
This bill was reserved when the court maintained the state's objection to the following question by defense counsel:
"Was Mike known as a `torpedo' man, as they say?"
The question referred to one Mike Famiglietti, whom defense counsel tried to establish as a participant, along with James Knight, in the Corso murder.
Because of the purpose for which the testimony was being elicited, evidence as to the character of this man, Famiglietti, may have had some relevance. However, defense counsel laid no foundation whatsoever to show that the witness was aware of Famiglietti's character as required by La.R.S. 15:479 et seq. To the contrary, when asked to describe what type of gentleman Famiglietti was, the witness replied, "[v]ery little I knew about the man."
*344 In the absence of a proper foundation, the ruling of the trial court is clearly correct. The bill is without merit.
BILL OF EXCEPTIONS NO. 94
This bill was reserved to the denial of a motion to suppress the identification of the defendants by a state witness, Sandra Decker. Ms. Decker testified that she was shown a series of photographs by the police which included photographs of the three defendants. She was able to identify the defendants. At this point, defense counsel moved to suppress the identification of the defendants by Ms. Decker.
This bill is without merit. Not only does the evidence fail to show any improper suggestion in the identification procedure, but also Ms. Decker testified that she lived in close contact with the defendants for several days, indicating an ample independent basis for her ability to identify the defendants. State v. Mosely, 284 So.2d 749 (La.1973); cf. State v. Newman, 283 So.2d 756 (La.1973).
BILLS OF EXCEPTIONS NOS. 95, 96, 97 and 98
These bills are related to objections to photographic exhibits on grounds of irrelevancy. To each of these bills, defense counsel has attached by reference a copy of the testimony of state's witness, Sandra Decker. In each case, a thorough reading of the transcript attached by reference fails to reveal any offer of the cited exhibits. These bills must therefore be considered defective, and present nothing for our review. La.C.Cr.P. art. 844.
BILL OF EXCEPTIONS NO. 99 (Nix only).
This bill was reserved when the trial court denied a defense motion to suppress a photographic identification of defendant, Kirksey M. Nix, Jr., made prior to trial by Mrs. Marion Corso. The basis for the motion to suppress was the following language in an extradition affidavit seeking the return of Kirksey M. Nix, Jr. from Texas:
"Your affiant was shown a Dallas, Texas police photo, No. 175025, dated 11-18-68, of the defendant, Kirksey McCord Nix, and positively identifies it as being that of one of the persons who broke into her residence at 1301 Soldier Street, in the City of New Orleans, Parish of Orleans, State of Louisiana * * * on April 11, 1971."
Mrs. Corso specifically testified that she picked a photograph of the defendant, Kirksey McCord Nix, Jr. from "quite a large stack of photographs." She further testified that no suggestion was offered by the police as to whom she should identify, and that she didn't recall seeing any photographs of any of the defendants in any newspaper prior to the photographic identification.
Mrs. Corso explicitly testified that the photographic identification occurred before she was shown the Dallas, Texas police photograph attached to the extradition affidavit. She also testified that she never viewed the defendants in the police station or elsewhere between the night of the crime and the bond hearing in court, except for the photographic lineup.
The evidence overwhelmingly proponderates in favor of the holding of the trial court denying the motion to suppress. This bill is without merit.
BILL OF EXCEPTIONS NO. 100
When the trial court sustained the state's objection to attempts by defense counsel to impeach Mrs. Corso by showing inconsistencies between her testimony and reports and affidavits prepared by police officers, this bill was reserved.
The trial judge read La.R.S. 15:493 to defense counsel and instructed *345 them that impeachment would have to be done in the manner prescribed by law. This bill was reserved to the court's ruling. The ruling is clearly in accord with the statute. No proper foundation had been laid to impeach Mrs. Corso's testimony at the time this bill was reserved. State v. Pellerin, 286 So.2d 639 (La.1973).
This bill is without merit.
BILL OF EXCEPTIONS NO. 101
This bill was reserved when the trial court maintained the state's objection to the introduction into evidence of a photograph.
The photograph of a man who allegedly looked similar to the defendant, Kirksey McCord Nix, Jr., was shown to the state's witness, Mrs. Marion Corso. Mrs. Corso specifically testified that the photograph was not that of one of the men in her home the night her husband was killed. Defense counsel nevertheless offered the photograph into evidence. The state's objection on grounds of irrelevancy was sustained, and this bill was reserved.
The ruling was correct. The photograph of an unidentified person bearing a physical resemblance to one of the defendants, who has in no way been connected with the case being tried through competent evidence, tends to show neither the commission of the offense, nor to negate the commission of the offense, and is therefore irrelevant. La.R.S. 15:441.
The bill is without merit.
BILL OF EXCEPTIONS NO. 102
When the trial court refused to recognize a defense witness, Dr. Alvin Cotlar, as an expert in the interpretation of Xrays, this bill was reserved.
The court recognized Dr. Cotlar as an expert in the field of medicine. With regard to the fields of radiology and X-ray examination, Dr. Cotlar frankly disclaimed any expertise in the field of radiology. Dr. Cotlar further testified that he had never taken an X-ray. Regarding X-ray interpretation, Dr. Cotlar testified: "I read X-rays like any physician reads X-rays; but I rely greatly on the radiologist for an interpretation, if that's what you mean, yes."
La.R.S. 15:466 states:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
The trial court correctly refused to qualify the witness as an expert in the field for which he was tendered.
BILL OF EXCEPTIONS NO. 103
This bill was reserved to the denial of a defense motion for a mistrial.
The motion was made on the basis of a news report which stated that the trial judge wiped his eyes during the testimony of Mrs. Corso on the previous day in the presence of the jury.
The reporter demonstrated the act, which is verbally described as follows:
"Let the record reflect that the witness indicates the Court passed the back of its hand over its left eye."
This bill is without merit. There was no objection or motion at the time the alleged act occurred. Obviously the alleged act, if it occurred, was not so obtrusive as to indicate a comment on the evidence by the trial court, since none of the three able defense counsel thought it necessary to object or move for a mistrial at the time. Further, the jury was sequestered so that they were not exposed to the news report describing the alleged act.
*346 BILLS OF EXCEPTIONS NOS. 104, 105, 106 and 107
These bills relate to attempts by defense counsel to impeach the testimony of a state's witness, introduce a police report into evidence, and to elicit from the witness the contents of the police report.
Bill No. 104 was reserved when the trial court sustained the state's objection to defense counsel reading portions of the police report to the witness. The ruling was correct. The report in question was prepared by three officers. No foundation was laid to show that the officer on the stand prepared the parts of the report being related, nor whether the particular statements being read were based on actual observation or hearsay evidence.
Bill No. 106 was reserved to the exclusion of parts of the report recounting interviews and conversations with witnesses other than at the scene of the crime shortly after its perpetration. The trial court correctly excluded the contents of the report which related to such conversation as impermissible hearsay.
Bill No. 105 was reserved following a ruling by the trial court that defense counsel could question the police officerwitness concerning Mrs. Corso's statements made at the scene of the crime, as being part of the res gestae, but that the officer could not recount what Mrs. Corso told him in an interview one to two hours later at the hospital. The report of the hospital conversation was correctly excluded as hearsay. La.R.S. 15:435. It could not be properly included as part of the res gestae, as it was too far removed in time from the occurrence, and would necessarily have consisted of a narration by Mrs. Corso. La.R.S. 15:447. Cf. the discussion and disposition of Bills Nos. 44, et seq., supra.
Bill No. 107 was reserved when the trial court rejected defense counsel's tender of the entire report into evidence. The ruling was clearly correct. The report, as previously pointed out above, contained inadmissible hearsay evidence. The officers who prepared the report and the witnesses they interviewed were all available to personally testify, subject to crossexamination. This live testimony constitutes the best evidence of the facts related in the report. La.R.S. 15:436.
These bills lack merit.
BILL OF EXCEPTIONS NO. 108
This bill was reserved when the trial court overruled defense counsel's objection to the state calling Susan Corso, minor daughter of the deceased, as a rebuttal witness. Defense counsel argued that she should have been presented during the state's case in chief.
The trial judge, in his per curiam to this bill, aptly notes:
"The defense had put on testimony that one of the defendants, Mr. Mule, could not have been present at the scene of the crime as he was at a distance too far to arrive at the scene of the alleged crime at the time of the alleged crime. The State offered this witness to rebut the alibi of the defendant, Mr. Mule, by having the young girl identify Mr. Mule as one of the men she saw at the time of the commission of the offense."
The normal order of trial, as set forth in La.C.Cr.P. art. 765, calls for the presentation of evidence by the state, by the defense, and then by the state in rebuttal. See also La.R.S. 15:282.
Generally, the state must put its whole case in evidence in its presentation in chief, and only rebuttal testimony should be reserved to meet evidence adduced by the defense. State v. Washington, 272 So.2d 355 (La.1973). The state is not bound to anticipate the defense of alibi, but may await and then rebut it. State v. Guillory, 140 La. 361, 72 So. 995 (1916).
*347 We do not think that the trial court abused its discretion in permitting the testimony of this witness on rebuttal. The state, in deference to the tender years of the witness, obviously chose not to call her on the case in chief. When her testimony was necessitated by the alibi defense offered by defendant, Peter Mule, the state was entitled to rebut the alibi by producing an additional eyewitness who placed the defendant at the scene of the murder. State v. Brown, 152 La. 801, 94 So. 401 (1923); State v. Carter, 51 La.Ann. 442, 25 So. 385 (1899).
Considering the burden placed upon the state to prove the guilt of each of the defendants beyond a reasonable doubt, we find the trial court was within its discretion in allowing this evidence on rebuttal.
The bill is without merit.
BILLS OF EXCEPTIONS NOS. 109 and 110
These bills were reserved when the trial court overruled defendants' objection to the general charge to the jury (Bill No. 109) and refused to give special charges tendered by the defense (Bill No. 110).
The general charge to the jury is included in the record. It has been reviewed by this Court and found to properly charge the law applicable to the case. Bill of Exceptions No. 109 is therefore without merit.
Defense counsel requested eight special charges. Special charges number 1 (circumstantial evidence), number 2 (credibility of witnesses), number 3 (false testimony), and number 4 (accomplices and coconspirators) were covered in substance in the general charge of the trial court. La.C.Cr.P. art. 807 provides that a requested special charge need not be given if it is included in the general charge or in another special charge to be given. In reliance on this article, the trial court properly refused to give the requested special charges outlined above.
The remaining requested special charges are adequately disposed of by the trial judge, in his per curiam, wherein it is stated that the "instructions which defense counsel requested me to do verged on the Court commenting on the evidence rather than charging the jury with the law."
The substance of requested special instruction number 5 (immunity and reward) was covered in the trial court's charge on credibility. To the extent that defense counsel sought to expand on the law given by the trial court, it could be construed as a comment on the evidence. Cf. State v. White, 254 La. 389, 223 So.2d 843 (1969).
Requested special instruction number 6 (identification testimony) is unduly repetitive, partially incorrect, and clearly requires both qualification and limitation. It was therefore properly rejected. La.C.Cr.P. art. 807. State v. Dugas, 252 La. 345, 211 So.2d 285 (1968), cert, denied, 393 U.S. 1048, 89 S.Ct. 679, 21 L.Ed.2d 691 (1969).
Requested special instruction number 7 (physical facts) was partially incorrect and would clearly constitute a comment on the evidence prohibited by La.C.Cr.P. art. 772. It was therefore properly rejected.
Requested special instruction number 8 (bloodstains) would, if given, have clearly constituted a comment on the evidence. It was properly rejected.
Bills of Exceptions Nos. 109 and 110 are without merit.
BILL OF EXCEPTIONS NO. 111
This bill was reserved when the trial court allegedly declined to instruct the jury regarding that portion of the state's argument dealing with commutation of sentence.
*348 The bill is rendered moot by the subsequent verdict of the jury, which returned a verdict of "guilty without capital punishment" as to each defendant.
BILLS OF EXCEPTIONS NOS. 112, 113 and 114
These bills were reserved to the denial of defendants' motion in arrest of judgment (Bill No. 112), motion for a new trial by all defendants (Bill No. 113), and motion for a new trial by defendant, Peter Mule, in proper person.
The motion in arrest of judgment alleges that the indictment was substantially defective in that it did not specify under which section of La.R.S. 14:30 the prosecution took place. This has been previously treated in our discussion of Bill of Exceptions No. 23, supra. It is further alleged that the verdict was not responsive, since the verdict did not specify which section of La.R.S. 14:30 the defendants were found guilty of violating. This argument is likewise without merit. The verdict was in proper form. La.C.Cr.P. art. 814. State v. Frezal, 278 So.2d 64 (La.1973).
The motion for a new trial filed on behalf of all defendants reurges these same points. To this extent, it is without merit. It is also argued that the defendants will have no protection against being twice placed in jeopardy unless there is a specific finding as to which section of La.R.S. 14:30 they were found guilty of violating. This point is likewise without merit. See State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974). Further, it is alleged that the verdict is contrary to the law and the evidence in that the defendant, John Fulford, should have been afforded a lunacy commission. We have discussed this point in detail in ruling on Bill of Exceptions No. 29. It is also alleged that the rebuttal witness of the state, Susan Corso, violated the court's sequestration orders and should not have been permitted to testify.
This point is adequately disposed of by the trial court in its per curiam to Bill of Exceptions No. 113:
"* * * the 11-year old daughter of the victim was brought from New Orleans to Lafayette for purposes of testifying because defense counsel has offered alibi witness as to one of the defendant[s], namely Mr. Mule. This 11-year old child was certainly permitted to be with her mother and the District Attorney took her the evening before and in the presence of her mother discussed the case with her. The record reflects that the mother did not discuss the facts of the case with the young girl nor did she discuss it with the detective who was assigned to guard Mrs. Corso and her child while they were in Lafayette. This procedure was not exactly as that outlined in my previous court order, but I am satisfied that nothing improper was done and that had the State requested that I grant them permission to handle the matter this way, I would have done so. I do not think that anything was improper when the District Attorney asked the little girl what she knew in the presence of her mother. I had been advise[d] that this young girl had been under psychiatric treatment because of the trauma of the episode at her home on the night of the killing of her father. Under those circumstances, I was entirely satisfied that nothing improper had been done and overruled the motion for new trial."
It is within the sound discretion of the trial court to determine whether a witness who is not placed under a sequestration order, or who violates an order of sequestration, may testify. State v. Washington, 294 So.2d 794 (La.1974); La.C.Cr.P. art. 764. We find no abuse of discretion on the part of the trial court in its handling of this matter, or in its denial of the motion for a new trial based upon this point.
The motion for a new trial reserved by Peter Frank Mule, in proper person, raises *349 the same issue regarding the testimony of Susan Corso treated in full above.
Further, the motion complains about a statement made by the district attorney in his closing statement which was allegedly an appeal to prejudice. Any objection to the remark was waived by the failure of the defendant to make a contemporaneous objection and reserve a bill of exceptions had the ruling been adverse. La.C.Cr.P. arts. 841, 851.
These bills of exceptions are without merit.
BILLS OF EXCEPTIONS NOS. 115, 116 and 129
These bills relate to the granting of a state motion to transfer the defendants from the Orleans Parish Prison to the Louisiana State Penitentiary pending their appeal. Bill No. 115. Defendants further moved to subpoena all of the security personnel of Orleans Parish Central Lock-Up in connection with their opposition to the foregoing motion. To the denial of this motion, defendants reserved Bill No. 116. These bills were rendered moot by the subsequent remand of this case to the Parish of Lafayette and the resentencing of the defendants in that Parish.
Bill of Exceptions No. 129 was reserved when the district court, on remand to the Parish of Lafayette, ordered the defendants, Peter Mule and John Fulford, held in the Louisiana State Penitentiary rather than the Parish Jail of the Parish of Lafayette.
The issue is moot. Our decision in this case renders unavailable the requested relief.
BILL OF EXCEPTIONS NO. 117
This bill was allegedly reserved to an order of the trial judge admitting into the record an exhibit, S-2, at a post-trial hearing. Neither the exhibit nor any testimony is attached to Bill No. 117, nor incorporated therein by reference. The bill therefore presents nothing for review. La.C.Cr.P. art. 844.
BILLS OF EXCEPTIONS NOS. 118 and 119
Upon resentencing of the defendants on January 4, 1974 (their original sentences having been vacated), defense counsel for Kirksey M. Nix, Jr. and Peter F. Mule moved that the sentencing be continued for a period of two weeks to permit counsel to confer simultaneously with the two defendants. Defendant, Nix, also filed a motion for a continuance, alleging that he needed additional time to consult with his attorney about some "newly obtained" but possibly incriminating information. To the denial of these motions, Bills of Exceptions Nos. 118 and 119 were reserved.
In his per curiam to Bill of Exceptions No. 118, the trial judge states:
"This Court felt that defendants had more than ample opportunity to consult with their attorneys and that the continuing of this matter for an additional two weeks would only serve to prolong rather than get this matter up on appeal so that their appeal could be heard."
The granting or denial of a motion for continuance addresses itself to the sound discretion of the trial court. La.C.Cr.P. art. 712.
Defense counsel has cited no authority for the proposition that the defendant's constitutional rights to effective assistance of counsel requires that jointly tried defendants be allowed to consult with counsel simultaneously to discuss appeals strategy, nor has our research revealed any such requirement.
We find no abuse of discretion in the ruling of the trial court to which Bill of Exceptions No. 118 is addressed.
*350 Likewise, no abuse of discretion is demonstrated in the denial of the motion for a continuance filed by Mr. Nix in proper person. Mr. Nix and his counsel had almost two years between trial and the hearing at which the motion was made to correspond and otherwise communicate and to investigate any information which may have come to the attention of Mr. Nix.
Bills of Exceptions Nos. 118 and 119 are without merit.
BILL OF EXCEPTIONS NO. 120
This bill relates to the denial of a motion by defendant, Kirksey M. Nix, Jr., in proper person for a "pre-appeal conference" with counsel and his co-defendants, or for the appointment of separate counsel and for a lengthy pre-sentence and pre-appeal conference with newly appointed counsel.
We have reviewed the motion and argument and find no abuse of discretion on the part of the trial court in denying the motion. The arguments presented in support of the motion are identical in substance to those made in support of the motions for continuance of sentencing treated in connection with Bills of Exceptions Nos. 118 and 119, supra. Further, at no time did Mr. Nix discharge his counsel, Mr. Mancuso and Mr. West, so as to entitle him to appointment of new counsel.
This bill is without merit.
BILL OF EXCEPTIONS NO. 121
This bill was reserved to the denial of a motion by defense counsel to meet simultaneously with Mr. Nix and Mr. Mule. The per curiam of the trial court indicates that the requested meeting was in fact allowed. The bill is therefore rendered moot.
BILL OF EXCEPTIONS NO. 122
This bill relates to a motion by Mr. Mancuso, representing defendants Nix and Mule, to appoint counsel for defendant Fulford, who was representing himself on posttrial motions, so that Mr. Mancuso could confer with Mr. Fulford's counsel.
We know of no law which would confer standing on Mr. Mancuso to move for the appointment of counsel for Mr. Fulford when Mr. Fulford had expressly insisted on defending himself. The bill is without merit.
BILL OF EXCEPTIONS NO. 126
This bill was reserved to the denial of a motion by defendant, Kirksey McCord Nix, Jr., in proper person, that the court inquire judicially or hold an evidentiary hearing to determine whether any illegal electronic surveillance had occurred at the Lafayette Parish Jail on January 4, 1974. The motion alleges that a jail trustee saw people believed to be elctronics technicians and a police captain go into a locked room adjacent to the attorney-client conference room.
The trial court denied the motion on the grounds that the trial had taken place approximately two years prior to the incident in question and the motion was immaterial to the proceedings before the court.
We find no abuse of discretion in the ruling of the trial court.
The bill is without merit.
BILLS OF EXCEPTIONS NOS. 127 and 128
These bills were reserved to the sentence imposed upon defendants, Peter Frank Mule (Bill No. 127) and Kirksey McCord Nix, Jr. (Bill No. 128). Each defendant was sentenced to the custody of the Department of Corrections, State of Louisiana, to serve the rest of his natural life at hard labor.
Each defendant was found guilty of murder without capital punishment. The *351 proper sentence is imprisonment at hard labor for life.
Defense counsel does not articulate his specific objection to the sentence, either in brief or in argument on his objection. Presumably, the objection is to the use of the adjective "natural" before the word "life." If so, we hold that the use of the word "natural" is mere surplusage which does not change the effect of the sentences, nor render them illegal.
These bills are without merit.
BILL OF EXCEPTIONS NO. 134
This bill was reserved during pre-trial voir dire examination of a potential juror. Defense counsel was permitted to ask the potential juror, a civil engineer, whether he had received a bachelor of sciences degree in engineering, the field of engineering in which he received his degree, and whether he was engaging in an engineering practice. When defense counsel persisted in asking the potential juror how long he had been practicing as an engineer, the court stopped the examination, stating that defense counsel had all the information pertinent to his qualifications as a juror. This bill of exceptions was reserved to the court's ruling.
Defense counsel was afforded wide latitude in his examination of this potential juror. At the point that the trial court stopped this line of questioning, everything even arguably necessary to the exercise of challenge for cause and peremptory challenge had been explored. The trial court did not unduly restrict voir dire examination. La.C.Cr.P. art. 786. We find no abuse of discretion in the ruling which is the subject of this bill. State v. Jones, 282 So.2d 422 (La.1973).
This bill lacks merit.
BILL OF EXCEPTIONS NO. 135
This bill was reserved when defense counsel alleged that a state witness, in reviewing certain photographs for identification purposes, "flipped" them in view of the jury. The objection of defense counsel was overruled by the trial judge. In his per curiam, the trial judge states:
"The defense counsel was objecting that the photographs were flipped, but the photographs were not shown to the point where they were available for the jury to view or inspect. For that reason, I overruled the objection."
We find no error in the ruling of the trial court. This bill has no merit. State v. Batiste, 318 So.2d 27 (La.1975).
BILL OF EXCEPTIONS NO. 136
This bill was reserved when the trial court maintained the state's objection to a line of questions propounded by defense counsel to a police officer-witness asking the witness to relate what he was told by various neighbors on the night of the Corso murder. The state objected that the question would elicit a hearsay answer. The court asked defense counsel whether he relied upon any exception to the hearsay rule which would render the evidence admissible. Defense counsel offered no exception which would encompass the elicited testimony.
In brief, defense counsel argues that the information formed part of the res gestae and should therefore have been admitted. No foundation was established which could have brought the elicited statements within the res gestae. See the discussion under Bill of Exceptions No. 44, supra. The ruling of the trial court was correct.
BILL OF EXCEPTIONS NO. 137
This bill was reserved to the denial of a defense motion to correct the transcript. The allegations of error in the transcript, along with the trial court's reasons *352 for denying the motion, are set forth in the trial court's per curiam as follows:
"The court has before it a motion to correct transcript by defendants Kirksey McCord Nix, Jr., and Peter Frank Mule. They allege that certain activities took place in the proceedings which are not a part of the record.
"They allege in Paragraph I that they do not find reference to defendant's attempt to call to the witness stand a minor child of one * * * and the exchanges that took place between the court and attorneys for the State and the defense.
"As I recall this particular incident, the following took place: Defense counsel West left the courtroom and came back into court with a small boy, age 4 or 5. As he reached the railing, defense counsel Mancuso met West and the boy. Mr. Mancuso and Mr. West conferred privately. Then Mr. West led the small boy out of the courtroom. There were no exchanges with the court or the State. Since there were no exchanges with the court or the State, there was nothing to transcribe and, therefore, nothing to go into the record.
"They allege in Paragraph II that exchanges took place between the court and defendant John Fulford.
"As I recall, this alleged incident of the court telling defendant to `sit down and shut up', occurred not at the time of Mr. Fulford's request to defend himself, but during the trial. I am sure the record reflects Mr. Fulford's request to defend himself and the court's ruling. The admonition given Mr. Fulford occurred during the trial and out of the presence of the jury. The incident occurred as follows: Defense counsel wanted to argue a question of law on evidence and the jury was removed from the courtroom. While the State and defense lawyears were arguing to the court the admissibility and non-admissibility of evidence, Mr. Fulford asked the court to say something. This request was denied for two reasons; (1) his lawyers were arguing for him and (2) I did not think I should have allowed a non-lawyer to argue questions of evidence, especially so since he was not a lawyer and secondly, he was not-familiar with Louisiana law.
"Another reason that I know that this incident did not happen in the presence of the jury is because I jealously guard against making any remarks of any nature in the presence of a jury. To do so, in my opinion, is absolutely wrong and I am positive that it was not done here or in any other trial.
"For the foregoing reasons, the motion is denied."
As the per curiam of the trial court fully answers the allegations of the motion, we find no abuse of discretion in denying the requested evidentiary hearing. The bill is without merit.
BILL OF EXCEPTIONS NO. 138
This bill was reserved to the denial of a motion for new trial based upon the failure of the trial transcript to reflect the charge to the jury of the trial judge.
This bill is meritless. The trial judge, in his per curiam, indicates that he read the written charges that he had prepared to the jury. The written charges are included in the record. There was therefore no need to transcribe the jury charges.
BILLS OF EXCEPTIONS NOS. 139 and 140 (John Fulford's Bills Nos. 1 and 2)
Defendant, John Fulford, perfected two bills of exceptions separate from those reserved by his codefendants.
The first alleges that the trial court failed to charge the jury that it could return a responsive verdict of guilty of manslaughter. The jury charges contained *353 in the record properly define manslaughter and list it as a responsive verdict. The bill is without merit.
The second bill of exceptions alleges that a petition for a writ of habeas corpus and/or motion for new trial was filed and denied by the trial court. There is no appeal from the denial of a writ of habeas corpus. La.C.Cr.P. art. 369. The alleged Motion for a New Trial is not attached to the bill of exceptions, nor can we locate such a motion in the record. We therefore have nothing before us to review. La.C.Cr.P. art. 844. This bill lacks merit.
Additionally, in brief defendant John Fulford raises an issue concerning the denial by the trial court of his motion to discharge his retained counsel and conduct his defense in proper person, or with the assistance of counsel. No bill of exceptions has been perfected as required by law to bring this issue before this Court. The provisions of La.C.Cr.P. art. 844 preclude us from considering the merits of the issue raised by Mr. Fulford.
For the reasons assigned, the convictions and sentences imposed upon the defendants are affirmed.

ON APPLICATION FOR REHEARING
PER CURIAM.
The defendant Fulford applies for rehearing. He relies primarily upon sixteen errors set forth in his pro se brief filed with this court on October 29, 1975 and reurged upon application for rehearing.
Our original opinion disposes of all of these contentions of error, except certain frivolous arguments and that raised with regard to his contention that he was denied the right to defend himself in proper person, contrary to his constitutional right to do so. In this regard, he particularly relies upon the recent decision of the United States Supreme Court in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
This court previously had refused, under the circumstances, to accord the defendant the writ sought, by denying him supervisory relief sought for that purpose. La., 299 So.2d 789 (1974). Our doing so, however, was prior to Faretta's clarification of the right of an accused to represent himself. Nevertheless, we find Faretta to be distinguishable and thus inapplicable to the present circumstances.
In Faretta, the United States Supreme Court had before it a case in which the defendant, from the outset, refused courtappointed counsel, preferring instead to defend himself in proper person. This was made clear to the trial judge several weeks prior to the scheduled trial date. The trial court nonetheless ordered that the defendant be defended by the office of the public defender.
In this factual context the Supreme Court held, 95 S.Ct. 2541: "In forcing Faretta, under these circumstances, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense. * * *" (Italics ours.)
Here Fulford retained his own attorney, Mancuso, as his counsel to conduct his defense in this case. Mancuso, throughout the pre-trial stages of these proceedings, conducted a vigorous and able defense on behalf of Fulford and his co-defendants. Fulford expressed no desire to defend himself in proper person until the date of trial, after the selection of the trial jury had been completed.
In Faretta, our high court declined to make the right of a defendant to represent himself in proper person absolute and assertable at any stage of the trial proceeding. To the contrary, the Court stated, 95 S.Ct. 2533-2534:
"* * * The language and spirit of the Sixth Amendment contemplate that counsel, *354 like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendantnot an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and defend his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. [Citations omitted] This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel `represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense."
We hold here that Fulford acquiesced in being represented through counsel when, at the outset, he retained Mancuso as his counsel. For the trial court to have granted the motion by Fulford, especially in light of his previous motion to be declared mentally incompetent to even assist in his own defense, much less conduct a defense in proper person, would have been to court reversal under the thenapplicable holding of the United States Supreme Court in Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966).
In any event, Fulford's motion, coming as it did after the trial had commenced with the selection of the jury, La.C.Cr.P. art. 761, was not a timely assertion of his right to conduct a defense in proper person. In Faretta, the United States Supreme Court expressed no intention to overrule the numerous decisions of both state and federal courts holding that it is not an abuse of discretion by a trial court to deny a motion to defend in proper person when that motion is not made until after the trial has commenced. See the numerous cases collected in the Annotation, 77 ALR2d 1233, so holding.
On its merits, therefore, we reject Fulford's assertion that he was denied his right to serve as his own attorney in the legal proceedings below. By retaining his own counsel and by not asserting his right to defend himself in proper person until after the trial commenced, Fulford waived any right he may have had to conduct his own trial. He was, however, fully permitted to assist Mancuso in the latter's excellent trial representation of him as the accused.
As earlier noted, our original opinion disposed of the other contentions raised by the application for rehearing and by the petitioner's pro se brief.[1]
Accordingly, for the reasons assigned, we deny the defendant's application for rehearing.
Application for rehearing denied.
NOTES
[1] References to the provisions of the Code of Criminal Procedure concern the Code provisions as they existed at the time of trial, in 1972.
[2] The Court stated:

"That the two evidentiary rules are not identical must be readily conceded. It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise [Citations omitted.]. The hearsay exception that Georgia applied in the present case, on the other hand, permits the introduction of evidence of such an out-of-court statement even though made during the concealment phase of the conspiracy." 400 U.S. at 81, 91 S.Ct. at 215.
[3] The Court stated:

"* * * The most cogent objection to the admissibility of the taped conversations here at issue is that they are a collection of outof-court statements by declarants who will not be subject to cross-examination and that the statements are therefore inadmissible hearsay. Here, however, most of the tapes apparently contain conversations as to which one or more of the defendants named in the indictment were party. The hearsay rule does not automatically bar all out-of-court statements by a defendant in a criminal case. Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy. The same is true of declarations of coconspirators who are not defendants in the case on trial." (Citing Dutton, supra, 418 U.S. at 700-01, 94 S.Ct. at 3104.)
[1] Prior to hearing the appeal, we recognized the right of the defendant to file a brief in personam, concurrent with his continued representation by counsel. See 299 So.2d 789 (La.1974).